UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KIM COUGHLIN,  MARIE ZWEIG, ANNE
GALLAGHER, DONNA NOYCE, TAYLER
THOMPSON  and NYS COURT EMPLOYEES
AGAINST MANDATES LTD

Plaintiffs,

-against-                                                                 No 2:22-CV-04022

NEW YORK STATE UNIFIED COURT SYSTEM,
NEW YORK STATE OFFICE OF COURT
ADMINISTRATION, CHIEF JUDGE JANET
DIFIORE *in her official administrative capacity as
Chief Judge,*
CHIEF ADMINISTRATIVE JUDGE LAWRENCE K.
MARKS, *in his official capacity,* JUSTIN BARRY *in
his official capacity as Chief of Administration,*
NANCY BARRY *in her official capacity as Chief of
Operations*, CAROLYN GRIMALDI, *in her official
capacity as Director of Human Resources.*

Defendants

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
262 RXR Plaza, Suite #613
Uniondale, New York 11556
(631) 450-2468
Claveglia@cjllaw.org

*Attorneys for Plaintiffs*

## Table of Contents

PRELIMINARY STATEMENT ............................................................................................. 4

FACTUAL BACKGROUND.................................................................................................. 5

I.   The Office of Court Administration Superficially Expanded its Mission To
     Encompass Public Health and Safety. ............................................................... 5

II.  Defendants Arguments Are Fatally Flawed Along With The Cases It Relies On.
     7

ARGUMENT ...................................................................................................................... 10

DEFENDANTS' MOTION IS PREMATURE..................................................................... 11

DEFENDANTS HAVE FAILED TO MAKE A STRONG SHOWING THAT
PLAINTIFFS' CLAIMS ARE UNMERITORIOUS ........................................................... 12

    First cause of action (Guarantee Clause).................................................................. 12

    Second Cause (Separation of Powers). ..................................................................... 14

    Third Cause (Substantive Due Process)................................................................... 14

    Fourth Cause (Conspiracy)........................................................................................ 15

    Fifth Cause (Brach of Contract) ................................................................................ 16

    Sixth Cause of Action (Procedural Due Process) ..................................................... 16

    Seventh Cause of Action (State Due Process Clause)............................................... 16

    Eighth Cause of Action (equal protection_3 counts).................................................. 16

DISCOVERY WOULD LIKELY BE MINIMAL AND A RULE 26 (f) CONFERENCE
WOULD SEPARATE VALID CONCERNS FROM SPECULATION.............................. 19

PLAINTIFFS WOULD BE PREJUDICED BY A STAY.................................................... 19

CONCLUSION.................................................................................................................... 20

### Cases

*Abramson v. Pataki,* 278 F.3d 93, [2d Cir.2002] ............................................................. 15

*Allstate Life Ins. Co. v. Est. of Miller,* 2004 WL 141698 [S.D. Fla. Jan. 16, 2004.......... 20

*Castle Rock v. Gonzales* 545 U.S. 748 [2005] ...................................................................... 7

*Ciambriello v County of Nassau,* 292 F3d 307, [2d Cir 2002] .......................................... 15

*Civ. Serv. Emps. Ass'n, Inc.* v. *N.Y. State Pub. Emp. Rels. Bd.,* 157 N.Y.S.3d 675,
[Albany Sup. Ct. 2021] ........................................................................................................ 8

*Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261 [1990] ..................... 14

*DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 [1989].... 7

*Duncan v McCall,* 139 US 449, [1891].............................................................................. 12

*Hachette Distribution, Inc. v. Hudson Cnty. News Co.,* 136 F.R.D. 356, [E.D.N.Y. 1991].
................................................................................................................................................ 10

*Jankowski–Burczyk v. INS,* 291 F.3d 172 [2d Cir.2002] .................................................. 17

*Kane, et al., v. de Blasio, et al.,* No. 21-3047 [2d Cir. 2021]; ........................................... 19

*Keil, et al., v. City of New York, et al.,* No. 21-3043 [2d Cir. 2021]. ................................. 19

*Lippman v. Public Employ. Relations Bd.* 296 A.D.2d 199, [3d Dept. 2022] .................... 6

*Martinez v. County of Suffolk* , 999 F.Supp.2d 424 [E.D.NY. 2014]. .............................. 15

*McMinn v. Town of Oyster Bay,* 105 A.D.2d 46, [1984 ..................................................... 16

*Moore v. East Cleveland,* 431 U.S. 494 [1977]; ............................................................... 14

*NFIB v. OSHA,* 595 U.S.__, 6-7 [2022] ............................................................................ 12

*Rasulo v Hartnett,* 831 F Supp 2d 714, 721 [SDNY 2011] ............................................. 15

*Rivera v. Inc. Vill. of Farmingdale,* 2007 WL 3047089 [E.D.N.Y. Oct. 17, 2007]. ......... 11

*Thomas v. New York City Dep't of Educ.,* 2010 WL 3709923, [E.D.N.Y. Sept.14, 2010].

.............................................................................................................................................. 10

*Washington v. Glucksberg,* 521 U.S. 702 [1997] .............................................................. 14

### Rules

§100.[E][1] .............................................................................................................................. 9

§100.[E][1][a][ii] ................................................................................................................... 9

§100.[E][1][d][iii] .................................................................................................................. 9

§100.3[B][1] ........................................................................................................................... 9

Rule 11 [b] [3] ........................................................................................................................ 20

Rule 26(f) ............................................................................................................................... 19

### Constitutional Provisions

Article IV Section IV ............................................................................................................. 12

Fourteenth Amendment.......................................................................................................... 16

N.Y Const, art VI §28 (a) ...................................................................................................... 13

Tenth Amendment .................................................................................................................. 13

The New York State Unified Court System (UCS), the Office of Court Administration (OCA) and the individually named Defendants (Defendants) request for a stay of discovery prior to a pre-motion conference should be denied.

## PRELIMINARY STATEMENT

In August 2021, the cold machinery of the OCA instituted a requirement that all judicial and non-judicial staff get vaccinated (Mandate or Vaccine Mandate). The OCA has no police power or ability to implement public health measures. While the risk of contracting COVID-19 is not unique to courthouses, the OCA still required court staff to be injected with genetic material (mRNA) that manipulates human cells to build spike proteins (Covid Vaccine). The cells it manipulates are the same ones responsible for life itself.

It cannot be undone at the end of the workday. Defendants purportedly implemented the Mandate to protect the public from transmission of SARS-CoV-2 (Virus). Except, there is no vaccine that prevents the transmission of Virus. Since no vaccine prevents the transmission of Virus, the Mandate does not protect the public. Defendants still required employees get vaccinated. Irrespective of location, case rates, and individual circumstances.

Defendants considered fully vaccinated employees to be unvaccinated a year from the date of full vaccination. Yet, these employees were not terminated. Certain unvaccinated Plaintiffs were though. These employees were not required to test weekly. Certain unvaccinated Plaintiffs were though. These employees did not have to apply for religious or medical exemptions. Yet most unvaccinated Plaintiffs did.

These employees suffered no adverse consequences. On the other hand, every Plaintiff has. Defendants also conspired to create a religious exemption process that was pre-determined.

The Mandate is patently unconstitutional and unlawful. But Defendants continue to require it. Plaintiffs are the minority of employees who have been harmed and targeted by Defendants. They are the backbone of the court system. They consist of men and women of every race and creed. They come from different backgrounds and are each unique, valued members of society. This action is the fifth lawsuit against Defendants. The strength of Plaintiffs' causes of action should make it the final one.

The defendants' rely wholly on precedent that, as discussed *inter alia,* is not applicable to the causes of action here, or the facts underlying them. The defendant's intended motion to dismiss will fail since Defendants cannot sustain a motion to dismiss pursuant to Rule 12(b)(6) under the facts as plead in the complaint (ECF No.1).

## FACTUAL BACKGROUND

### I.   The Office of Court Administration Superficially Expanded its Mission To Encompass Public Health and Safety.

Defendants strained attempt to justify Vaccine Mandate as a necessity to provide access to litigants is erroneous, misplaced, and unconstitutional. The UCS and OCA are two very different entities, with distinct purposes. The UCS is the court system while the OCA is its administrative arm.  UCS's mission is to "provide an

accessible forum to every litigant seeking redress of grievances." *Lippman v. Public Employ. Relations Bd.* 296 A.D.2d 199, 204-205 [3d Dept. 2022]. As such, the UCS exercises its constitutional prerogative through judicial decisions of the courts *i.d.* at 205. The OCA—on the other hand—provides the auxiliary, administrative policies encompassing the "institutional framework within which the daily business of the judiciary is conducted, i.e., the issuance of decisions in actions and proceedings" *i.d.* [citation and quotations omitted].

Requiring employees to get a Covid Vaccination is well outside the scope of administrative policies addressing the daily operations of the courts. The controversy in *Lippman* for example, was over an administrative order fixing maximum amounts court reporters could charge for stenographically transcribed court proceedings *i.d.* at 200-201. The court there found that the order was related to the UCS's mission of providing access by ensuring that litigants with lesser means could afford court transcripts *i.d.* The order challenged there was uniquely related to the daily operations of the court system.

In contrast, COVID-19, is not a danger unique to the court system. And Vaccine Mandate does not provide greater access to the courts. Importantly, whether Vaccine Mandate furthers access, is a factual issue that Plaintiffs have not placed before this Court to decide. The cases Defendants rely on involved special proceedings where certain facts were either not disputed or summarily determined by the court. This case has a very different posture. Plaintiffs have plead facts that Defendants will not be able to dispense with in its anticipated motion to dismiss.

Even more, the defendants have absolutely no duty to protect anyone in its buildings from the spread of viral pathogens. *C.f. DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 [1989] (holding that the Constitution does not impose an affirmative duty on the government to protect any person from harm); *Castle Rock v. Gonzales* 545 U.S. 748 [2005] (holding that police did not have an affirmative duty to enforce protective order against Respondent's estranged husband where Respondent informed police that the estranged husband had taken her children in violation of the order and estranged husband subsequently murdered the children). Defendants strained attempt to justify Vaccine Mandate as a necessity to provide access to litigants is erroneous, misplaced, and unconstitutional.

## II.      Defendants Arguments Are Fatally Flawed Along With The Cases It Relies On.

Defendants arguments is logically flawed at the threshold. The defendants rely on hasty generalizations to make Plaintiffs case appear to be something it is not. *See* (ECF No.1 ¶ 7). Defendants essentially argue that the stay for discovery should be granted because others have challenged the Vaccine Mandate and lost. *See e.g.* (*Def. Mem. of Law p 6*). According to Defendants, Plaintiffs challenge here involve similar legal claims, so it too will be dismissed *i.d.* Defendants then re-paint Plaintiffs' causes of action on an empty canvass to appear the same *i.d.* at 7-11.

First, Defendants mischaracterize Plaintiffs causes of action. *Compare (i.d.) with* (*ECF* No. 1). Second, Defendants replace an analysis with conclusions and

misleading, self-serving summaries. *See e.g.* (Def. Mem. of Law p 9-10).  Defendants dare not touch the plethora of underlying, distinguishable facts *i.d.*

Third, Defendants misstate basic, but material facts. For instance, Defendants assert that "Plaintiffs here, a small minority of former and current UCS employees who have neither obtained the COVID-19 vaccine nor received a medical or religious exemption, filed this action . . ." *i.d.* at p 6.  Plaintiffs consist of employees who were granted religious exemptions and did get the COVID-19 shot *see* (ECF No. 1 ¶16). Fourth, Defendants—despite great effort—cannot conveniently place this case in the same box of facts as the others. Defendants try to compare apples to apples by painting an orange red. Thus, Defendants arguments collapse because its reasoning is logically flawed from the start.

Next, Defendant's  rely on four (4) cases that are not dispositive here for varying reasons *see* (Def Ex. A-E). The one federal case cited by Defendants is inapposite. And *Civ. Serv. Emps. Ass'n, Inc.* v. *N.Y. State Pub. Emp. Rels. Bd.,* 157 N.Y.S.3d 675, [Albany Sup. Ct. 2021] (CSEA) is distinguishable.  In that case no material facts were contested *i.d.* at 877. Petitioners sought injunctive relief claiming that the UCS violated the New York State Taylor Law (Civil Service Law art 14) by imposing a condition of employment without engaging in the collective bargaining process first *i.d.* Petitioners also filed the action pursuant to New York Civil Practice Laws and Rules (CPLR) Article 78, appealing determinations made by the Public Employees Relations Board (PERB)*i.d.* at 880-881. The Albany County Supreme

denied Petitioners request for injunctive relief, reasoning that Petitioners could not establish irreparable harm *i.d. at* 893.

The two remaining state cases Defendants' heavily rely on, are intrinsically flawed *see* (Def Ex. D, E). First, neither are published opinions. They are not even available on Westlaw. Second, they necessarily accept as true, material facts disputed here. Third, the two judges who presided over the cases, respectively, were direct witnesses in the controversy before them. Defendants subjected them to the same Vaccine Mandate that Petitioners there were challenging. Further, three of the defendants were their superiors. Additionally, the judges'—like most of society—were likely to have their own preconceptions regarding COVID-19.

As such, it is hard to imagine that any human being in their robes, could be fully impartial. Human beings are imperfect. Defendants' assumption that judges— despite the best of intentions—are impervious to bias once they take the bench is mistaken. *See* (New York State Rules Governing Judicial Conduct: §100.3[B][1] (Adjudicative Responsibilities) ("[a] judge shall not be swayed by . . .fear of criticism." ); §100.[E][1] (Disqualification); §100.[E][1][a][ii] (disqualification proper where "the judge has personal knowledge of disputed evidentiary facts concerning the proceeding."); §100.[E][1][d][iii] (Disqualification where a judge "has an interest that could be substantially affected by the proceeding." ) ). Those two cases are tainted from the outset. Nevertheless, those case are distinguishable and not applicable, as discussed below.

## ARGUMENT

A stay of discovery is warranted "only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." *Hachette Distribution, Inc. v. Hudson Cnty. News Co.,* 136 F.R.D. 356, 358 [E.D.N.Y. 1991]. Factual issues permeate every cause of action here. Thus, staying discovery is improper from the outset. Even more, Plaintiffs' assert facts that—if true—plainly establish its causes of action. Additionally, Plaintiffs assert facts that have not been fully tested through the adversarial process. This alone, favors denying Defendants motion to stay discovery.

When evaluating whether to stay discovery pending a dispositive motion, the courts are guided by various factors, none of which is solely dispositive. *See generally Thomas v. New York City Dep't of Educ.,* 2010 WL 3709923, at *3 [E.D.N.Y. Sept.14, 2010]. Further, this Court's inquiry is determined on a case-by-case basis since "such an inquiry is necessarily fact-specific and depends on the particular circumstances and posture of each case." *Hachette Distribution, Inc i.d.* at 358. Several factors considered by courts in this circuit are "(1) the type of motion and whether it is a challenge as a matter of law or to the sufficiency of the allegations, (2) the nature and complexity of the action; (3) whether counterclaims and/or cross-claims have been interposed; (4) whether some or all of the defendants join in the request for a stay; (5) the posture or stage of the litigation; (6) the expected extent of discovery in light of the number of parties and complexity of the issues in the case; and (7) any other relevant circumstances." *Hachette Distribution, Inc i.d.*[internal quotes omitted].

Other relevant factors this Court may consider are " (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Rivera v. Inc. Vill. of Farmingdale,* 2007 WL 3047089, at \*1 [E.D.N.Y. Oct. 17, 2007].

## DEFENDANTS' MOTION IS PREMATURE

Importantly, there is no pending motion to dismiss. The Honorable Judge Block correctly denied the parties stipulation allowing Defendants' to move to dismiss *see* (Electronic Order dated August 3, 2022). This Court Ordered Defendants to file an answer or letter requesting a pre-motion conference as to their anticipated motion to dismiss by October 3, 2022, *i.d.* The Honorable Judge Wicks properly denied Defendants motion to adjourn the initial conference *see* (Electronic Order dated August 4, 2022). It is nearly impossible for this Court to apply the numerous factors here at the inception of this case.

Defendants instant motion should not be entertained because it contravenes this Court's Orders dated August 3, 2022, and August 4, 2022. Instead of filing an answer or submitting a letter requesting a pre-motion conference by October 3, 2022, Defendants essentially use the instant motion to improperly inject the crux of its anticipated motion to dismiss.

Most, if not all the cases cited by Defendants involve pending motions. Without a pending motion, this Court cannot evaluate Defendants self-serving conclusions,

nor can Plaintiffs fully oppose Defendants numerous claims. Indeed, the defendants use its motion as a blank canvas to repaint Plaintiffs causes of actions to appear like those that have failed previously. Defendants' assert that they intend to move to dismiss pursuant to Rule 12(b)(6) as a matter of law, but ignore the factual underpinnings of Plaintiffs' claims. There is no doubt that the facts asserted by Plaintiffs establish cognizable causes of action. Plaintiffs nevertheless provide the following arguments in support.

## DEFENDANTS HAVE FAILED TO MAKE A STRONG SHOWING THAT PLAINTIFFS' CLAIMS ARE UNMERITORIOUS

**First cause of action (Guarantee Clause):** Plaintiffs' first cause of action alleges that Defendants violated Article IV Section IV of the United States Constitution-Guarantee Clause (ECF No.1 p23). Defendants gloss over this by combining the first and second causes of action as one *see* (Def. Mem. of Law p. 8 ). Plaintiffs acknowledge there is some overlap. The Vaccine Mandate violated the Guarantee Clause *Cf. NFIB v. OSHA,* 595 U.S.__, 6-7 [2022] [per curium] [slip op] (holding that OSHA did not have authority to enforce COVID-19 vaccine requirement over workers since COVID-19 is a universal risk that cannot be undone at the end of the workday and would unconstitutionally expand OSHA's authority by allow them to regulate the daily lives of Americans just because they had jobs); *Duncan v McCall,* 139 US 449, 461, [1891] (stating that republican form of government is the representation of the people through their elected officials and

that the people, by enacting constitutions, "have themselves thereby set bounds to their own power, as against the sudden impulses of mere majorities."). The Supreme Court's interpretation of the United States Constitution controls everywhere. Further, since the defendants are not the State, it has absolutely no police powers pursuant to the Tenth Amendment (ECF No.1 ¶27).

*Brignall* and *Ferrelli* do not control for the reasons above. However, both cases—like Defendants—asserted this power from thin air. The *Brignall* court provided no reasoning or authority *i.d.* at 4-5. The court merely stated that the UCS issued the "Vaccination Policy" to facilitate access to the courts *i.d.* at 4. Ironically, that court also cited N.Y Const, art VI §28 (a) which requires the Chief judge to consult with the administrative board prior to establishing standards and policies *i.d.* at 5. The Chief Judge did not consult with the administrative board here.

The court in *Ferrelli* took the premise that the Administrative Chief Judge had broad grant of authority over the administration and operation of the UCS *i.d.* at 19-21. To conclude that, it would undermine the constitution if the Chief Administrative judge "had no authority to enact time sensitive health and safety policies for the purposes of restoring in person proceedings in **our** courthouses." *i.d.* at 21 (emphasis added). The gap from premise to conclusion is so large one would have to fly to the conclusion. Moreover, that court mistakenly focused on the UCS instead of the OCA. The OCA carried out the Mandate. Notably, Chief Judge DiFiore was not named in any of these suits. *Ferrelli* exacerbates its flawed reasoning by citing *Brignall.* Defendants have failed to make a strong showing that this claim in unmeritorious.

**Second Cause (Separation of Powers).**  The second cause of action alleges a violation of the separation of powers under the State Constitution. Neither Court conducted a separation of powers analysis. Further, this is a matter of first impression. No administrative body in the judicial branch has ever regulated Plaintiffs daily lives as administrative agencies in the executive branch have. The defendants use of *Brignall* and *Ferrelli* have no bearing here. Defendants have failed to make a strong showing that this claim in unmeritorious.

**Third Cause (Substantive Due Process)**:  This Cause of action is very different than the substantive due process claim made in both cases. Here, Plaintiffs' assert that Defendants forced Plaintiffs to choose between two constitutionally protected rights (ECF p 25, ¶30). Plaintiffs aver that Covid Vaccines use technology that manipulate human cells, constituting the building blocks of life, to produce spike proteins *i.d.* at 39. On one hand, if Plaintiffs got the shot they would be deprived of the fundamental right to life. The building blocks of life must be akin to life itself, since life would not exist without the cells that create it. Alternatively, this encompasses liberty and/or property rights *see e.g. i.d. ¶¶* 30-47. That is, Plaintiffs surely have a property interest in their cellular biology, just as they do over their organs and appendages. And alternative to this, the right to refuse technology that manipulates human cells to make proteins is a fundamental right implicit in the nation's history. *Cf. Moore v. East Cleveland,* 431 U.S. 494 [1977]; *Washington v. Glucksberg,* 521 U.S. 702 [1997]; *Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261 [1990].

On the other hand, certain Plaintiffs who refused were deprived of their property interest in continued employment *see Rasulo v Hartnett,* 831 F Supp 2d 714, 721 [SDNY 2011] (holding that a person may possess a property interest in public employment if continued employment is guaranteed by contract or statute, absent just cause for discharge, or there is a de facto system of tenure); *Abramson v. Pataki,* 278 F.3d 93, [2d Cir.2002]; *Ciambriello v County of Nassau*, 292 F3d 307, [2d Cir 2002]. Plaintiffs assert that the defendants conduct shocks the conscience to the extent that no post deprivation process could countenance it. A choice that automatically results in the deprivation of a constitutional right, is no choice at all.

The defendants use of *Brignall* and *Ferrelli* have no bearing here. In those cases substantive due process claims were predicated upon bodily integrity and privacy. Defendants have failed to make a strong showing that this claim in unmeritorious.

**Fourth Cause (Conspiracy):** While Defendants appear to spot a fatal flaw, it is not on point. None of the defendants are employed in a municipality. Indeed the OCA is not a municipal corporation, Therefore, the intracorporate conspiracy doctrine is not applicable *contra Martinez v. County of Suffolk* , 999 F.Supp.2d 424 [E.D.NY. 2014]. Alternatively, Plaintiffs would move to amend the complaint to sue several named Defendants in their personal capacity. After all, the conduct alleged is reasonably outside of the scope of employment. Defendants incorrectly conclude that the complaint makes only conclusory allegations. The complaint speaks for itself *see* (ECF ¶¶ 40-80).

**Fifth Cause (Brach of Contract)** : Defendants assert that there was no operative contract at the time *see* (Def. Mem. of Law p. 10 ). As such,  are not necessarily attempting to enforce a collective bargaining agreement. Instead, they are seeking relief based on reasonable reliance that the parties would continue to honor the terms of their agreements, pending an agreement with their unions.

**Sixth Cause of Action (Procedural Due Process):** Plaintiffs certainly have a due process right in continued employment *see Rasulto v. Hartnett,* 831 FSupp 2d 714 [SDNY 2011]. Defendants have not shown how Plaintiffs were afforded the minimum of notice and an opportunity to heard. Defendants have failed to make a strong showing that this claim in unmeritorious.

**Seventh Cause of Action (State Due Process Clause):** It bears repeating that *Brignall* and *Ferrelli* have no value. Even if they did, they both are not applicable here. Both cases examined whether the Mandate was arbitrary through the lens of Article 78 proceedings where there were no issues of disputed facts. In any event, the facts alleged by Plaintiffs here sufficiently make out a *prima facie* case *see e.g.* (ECF No.1 ¶ 93-110). *McMinn v. Town of Oyster Bay,* 105 A.D.2d 46, [1984],  aff'd, 66 N.Y.2d 544, [1985].

**Eighth Cause of Action (equal protection_3 counts)[1]:** This cause of action has three different counts alleging three independent bases for the violation of the Fourteenth Amendment's equal protection clause (ECF No. 1 pp 35-38). Every case relied upon by Defendants in materially distinguishable.

---

[1] Plaintiffs incorrectly stated declaratory judgment as relief. This was done by mistake. The other prayer for relief is a money judgment. Thus showing that the declaratory judgment was a mistake.

**Count 1:** This count alleges a violation based on a class composed of UCA employees *i.d.* at 35-36. As averred throughout the complaint, OCA considered employees to be unvaccinated if they have not received a booster shot within a year from being fully vaccinated. Yet unvaccinated Plaintiffs were treated subjected to different standards (ECF No.1). Plaintiffs allege additional facts showing that the classification is not reasonably related to the ends of public safety. *See e.g. Jankowski–Burczyk v. INS,* 291 F.3d 172, 176 [2d Cir.2002]. This claim was not made in *Brignall* at all. Defendants have failed to make a strong showing that this claim in unmeritorious. No equal protection clause arguments were made in *Ferrelli.*

**Count 2:** This count expands the class to people in courts, generally. In the context of a contagious virus, all people who congregate together should be treated equally. Under the facts averred throughout the complaint, the classification has no rational relationship between the Vaccine Mandate and protecting the public health *see e.g.* (ECF No. 1 p36-37, ¶¶ 122-128). This claim was not made in *Brignall.* Defendants have failed to make a strong showing that this claim in unmeritorious.

**Count 3:** Unlike the other two counts, this cause asserts that Defendants have created a suspect class (ECF No.1 p37-38). It goes much deeper than the sole equal protection clause argument in *Brignall* . The suspect class is not based on immunity status *i.d.* at 22. Rather, it is based on the perceived genetic characteristics of Plaintiffs' immune systems (ECF No.1 p37-38). To the extent the defense will argue that they are the same; the defense would be mistaken. The Vaccine Mandate necessarily relies on the following premises and conclusions to justify its use.

Defendants purportedly implemented Vaccine Mandate to prevent the transmission of the Virus in courthouses. As a result, Defendants must believe that fully vaccinated employees' immune systems prevent transmission of the Virus. Defendants then must conversely perceive certain unvaccinated Plaintiffs' immune systems to be unable to prevent transmission of the Virus. Otherwise, Defendants cannot justify requiring Covid Vaccination.

From these premises, it logically follows that Defendants perceive fully vaccinated OCA employees to have immune systems that are superior to those of unvaccinated Plaintiffs. Discrimination does not lie with the superficial distinction of vaccinated versus unvaccinated. It lies in the perception that unvaccinated employees have an inferior immune system.

This creates a suspect class. And the classification does not further a compelling government. Indeed, Defendants have no compelling interest in stopping the spread of COVID-19. Alternatively, such a classification would not pass muster under deferential scrutiny. Defendants have failed to make a strong showing that this claim in unmeritorious.

Thus, Defendants confidence that they are "highly likely" to prevail is misplaced. Just the opposite, Defendants are highly likely to fail since it did not to make a strong showing that Plaintiffs claims are unmeritorious. In addition, Plaintiffs have amply demonstrated facts establishing *prima facie* causes of action (Plaintiffs do not waive the right to make additional arguments and have not set forth

the full basis herein). Any caselaw/arguments that Defendants' set forth in its reply will merely go to the weight—not the merits—of Plaintiffs' complaint.

## DISCOVERY WOULD LIKELY BE MINIMAL AND A RULE 26 (f) CONFERENCE WOULD SEPARATE VALID CONCERNS FROM SPECULATION.

While the full scope of discovery is not currently ascertainable, it will not be as burdensome as Defendants contend. In addition, a Rule 26(f) conference would reduce uncertainty and address the parties concerns. Defendants attempt to stay a Rule 26(f) conference leaves Defendants' speculative statements up in the air *see* (Def. Mem. of Law pp 11-12). Defendants concerns may not even be warranted. Absent a Rule 26(f) conference both parties are left to guess. Nevertheless, Plaintiffs anticipate that the bulk of discovery will center around the fourth cause of action alleging conspiracy.

## PLAINTIFFS WOULD BE PREJUDICED BY A STAY

Any delay is generally prejudicial to Plaintiffs. Specifically here, Plaintiffs would be prejudiced as it relates to their fourth cause of action (conspiracy). Plaintiffs have evidence that Defendants relied on OCA lawyers to establish a process to review religious exemption requests. Plaintiffs have evidence that an OCA lawyer supported denial of a request because "Many individuals who identify as Catholic have followed their conscience to become vaccinated. Indeed, Pope Francis has urged everyone, including Catholics, to get vaccinated." This was clearly improper *see Kane, et al., v. de Blasio, et al.,* No. 21-3047 [2d Cir. 2021]; *Keil, et al., v. City of New York, et al.,* No. 21-3043 [2d Cir. 2021]. Further, this occurred well after Defendants established

the review committee and alleged protocols. The fourth cause of action is based on the OCA lawyer's statement and other evidence. Plaintiffs cannot satisfy their burden of proof or defend against a motion to dismiss without discovery.

Because of the nature of the claim, Plaintiffs require discovery that the defendants have exclusive possession of, and Plaintiffs cannot procure the items needed through due diligence. *Accord* Rule 11 [b] [3] (supporting that claims still viable where discovery will provide evidentiary support). *See Allstate Life Ins. Co. v. Est. of Miller,* 2004 WL 141698, at *2 [S.D. Fla. Jan. 16, 2004] (holding that discovery warranted for factual predicate of argument where fraud was complex, and the party was unable to ascertain certain facts through due diligence).

Indeed, Defendants have not produced any documents relating to the criteria, standards, guidance, and  methods used to evaluate requests for religious exemptions. Defendants conducted its entire review process in secrecy, behind closed doors. Attempts to obtain documents have been denied. As such, Plaintiffs will certainly be prejudiced as to their fourth cause of action absent discovery.

## CONCLUSION

This Court should deny Defendant motion to stay discovery primarily because it failed to **make a strong showing** that plaintiffs claims are unmeritorious. Defendants can only speculate about the complexity and burden of discovery. A Rule 26(f) conference would help—not hinder—the possible burdens of discovery. And Plaintiffs would be prejudiced if discovery is stayed. Specifically, insofar as it would relate to Plaintiff's fourth cause of action.

Dated:     Uniondale, New York
            August 16, 2022

                        Respectfully Submitted,
                        LAW OFFICE OF CHAD J. LAVEGLIA PLLC

                By:        _____

                        Chad J. LaVeglia Esq.,
                        262 Rxr Plaza, Suite #613
                        Uniondale, New York 11556
                        *Attorneys for Plaintiffs*
                        (631) 450-2468
                        claveglia@cjllaw.org