**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIM COUGHLIN, MARIE ZWEIG, ANNE GALLAGHER, DONNA NOYCE, TAYLER THOMPSON, and NYS COURT EMPLOYEES AGAINST MANDATES LTD,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>NEW YORK STATE UNIFIED COURT SYSTEM, NEW YORK STATE OFFICE OF COURT ADMINISTRATION, CHIEF JUDGE JANET DIFIORE, CHIEF ADMINISTRATIVE JUDGE LAWRENCE K. MARKS, JUSTIN A. BARRY, NANCY BARRY, and CAROLYN GRIMALDI,<br><br>        *Defendants*. | 2:22-CV-04002 |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019–6064
Tel.: (212) 373–3000
Fax: (212) 757–3990

*Attorneys for Defendants*

Dated:  January 18, 2023

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 4

    A.    The COVID-19 Public Health Pandemic Substantially Disrupted the UCS's Ability to Provide Safe and Accessible Courthouses in Accordance with its Core Mission. ............................................................ 4

    B.    The UCS Imposed a Vaccination Policy to Ensure Continued Public Access During the Pandemic. ........................................................... 5

    C.    The UCS's Policy Provides for Medical and Religious Exemptions. ................... 5

    D.    Named Plaintiffs' Medical and Religious Exemption Requests Were Appropriately Denied ........................................................................ 6

    E.    New York Courts Have Already Rejected Similar Challenges to the UCS's Policy. ......................................................................................... 7

ARGUMENT ........................................................................................................... 8

I.     The Court Should Dismiss Plaintiffs' Guarantee Clause Claim for Lack of Subject Matter Jurisdiction Because It Presents a Non-Justiciable Political Question. .......................... 9

II.    The Court Should Dismiss Plaintiffs' Allegations of Article III Violations Because the UCS Appropriately Exercised its Authority in Implementing the Policy .......................... 9

III.   The Court Should Dismiss Plaintiffs' Allegations of Section 1983 Violations Because Plaintiffs Either Cannot or Have Failed to State a Claim. .............................................. 11

    A.    Plaintiffs' Section 1983 Claims Are Barred Because Defendants Are Improper Parties. ............................................................................... 12

    B.    Plaintiffs Have Not Adequately Alleged That the Vaccination Policy Violated Their Rights or Is Arbirary and Capricious Under the Due Process Clause. ............................................................................... 13

          1.    Plaintiffs' Substantive Due Process Claims Fail. ...................................... 13

          2.    Plaintiffs' Procedural Due Process Claims Fail. ........................................ 18

    C.    Plaintiffs' Equal Protection Claim Should Be Dismissed Because There is No Suspect Class and the Policy Easily Survives Rational Basis Review. .......... 19

IV.   Plaintiffs' Section 1985(3) Claim Should Be Dismissed as It Lacks Any Legal Basis.... 23

V.    Plaintiffs' Breach of Contract Claim Should Be Dismissed Because Plaintiffs Lack Standing and Fail to State a Claim ....................................................................... 24

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abadi* v. *City of New York*,
  2022 WL 347632 (S.D.N.Y. Feb. 4, 2022) ........................................................21, 22

*Alharbi* v. *Miller*,
  368 F. Supp. 3d 527 (E.D.N.Y. 2019) ....................................................................24

*Andre-Rodney* v. *Hochul*,
  569 F. Supp. 3d 128 (N.D.N.Y. 2021) ....................................................................20

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ................................................................................................9

*Ass'n of Jewish Camp Operators* v. *Cuomo*,
  470 F. Supp. 3d 197 (N.D.N.Y. 2020) ..............................................................16, 17

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ......................................................................................9

*Bd. of Educ. of City Sch. Dist. of City of New York* v. *N.Y.S. Pub. Emp. Rels. Bd.*,
  75 N.Y.2d 660 (N.Y. 1990) ...................................................................................11

*Benny* v. *City of Long Beach*,
  2021 WL 4340789 (E.D.N.Y. Sept. 23, 2021) .........................................................7

*Biehner* v. *City of New York*,
  2021 WL 878476 (S.D.N.Y. March 9, 2021) .........................................................25

*Bimber's Delwood, Inc.* v. *James*,
  496 F. Supp. 3d 760 (W.D.N.Y. 2020) ..............................................................16, 17

*Brignall* v. *N.Y.S. Unified Ct. Sys.*,
  No. E2022-0241CV ...................................................................................3, 8, 10, 19

*Broecker* v. *N.Y.C. Dep't of Educ.*,
  585 F. Supp. 3d 299 (E.D.N.Y. 2022) ...................................................................18

*Broidy Capital Mgmt. LLC* v. *Benomar*,
  944 F.3d 436 (2d Cir. 2019) ....................................................................................9

*Brooklyn 13th St. Holding Corp.* v. *Nextel of N.Y., Inc.*,
  2011 WL 694582 (E.D.N.Y. Dec. 30, 2011) .........................................................25

*Brown* v. *N.Y.S. Unified Ct. Sys.*,
   261 F. App'x 307 (2d Cir. 2008) ...................................................................12

*Bryant* v. *N.Y. State Educ. Dep't*,
   692 F.3d 202, 219 (2d Cir. 2012)...................................................................20

*Buffalo Tchrs. Fed'n, Inc.* v. *Bd. of Educ. of City Sch. Dist.*,
   142 N.Y.S.3d 736 (N.Y. Sup. Ct. 2021) ........................................................25

*Bunn* v. *City of Poughkeepsie*,
   No. 10 Civ. 2297 (PAE), 2012 WL 1621563 (S.D.N.Y. May 9, 2012)..................19

*Chambers* v. *Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..............................................................................6

*Chrysafis* v. *James*,
   534 F. Supp. 3d 272 (E.D.N.Y. 2021) ............................................................13

*City of Cleburne, Tex.* v. *Cleburne Living Ctr.*,
   473 U.S. 432 (1985)........................................................................................19

*Matter of City of Newark*,
   264 A.3d 318 (N.J. Super. Ct. 2021) ..............................................................11

*In re Civ. Serv. Emps. Ass'n, Inc., Loc. 1000, AFSCME, AFL-CIO* v. *N.Y. State*
   *(Unified Ct. Sys.)*,
   No. 534183, NYSCEF 24 (3rd Dep't Oct. 28, 2021) ...............................................3

*Civ. Serv. Emps. Ass'n, Inc.* v. *N.Y. State Pub. Emp. Rels. Bd.*,
   157 N.Y.S.3d 675 (N.Y. Sup. Ct. 2021) ...................................................3, 8, 25

*Clement* v. *Durban*,
   91 N.Y.3d 342 (2018) .....................................................................................22

*Clement* v. *Durban*,
   91 N.Y.S.3d 342 (2018)....................................................................................10

*Cnty. of Sacramento* v. *Lewis*,
   523 U.S. 833 (1998)........................................................................................16

*Cobb* v. *Pozzi*,
   363 F.3d 89 (2d Cir. 2004)..............................................................................19

*Columbus Ale House, Inc.* v. *Cuomo*,
   495 F. Supp. 3d 88 (E.D.N.Y. 2020) ..............................................................17

*Cramer* v. *Pyzowski*,
   2007 WL 1541393 (E.D.N.Y. May 25, 2007) .................................................12

*DeFlora Lake Dev. Assocs., Inc.* v. *Park*,
  654 F. App'x 9 (2d Cir. 2016) ........................................................25

*DeMartino* v. *N.Y.S. Dep't of Labor*,
  167 F. Supp. 3d 342 (E.D.N.Y. 2016) ..............................................14

*Doe* v. *Franklin Square Union Free Sch. Dist.*,
  568 F. Supp. 3d 2709 (E.D.N.Y. 2021) ..............................13, 14, 17

*Fac.* v. *New York Univ.*,
  11 F.4th 68 (2d Cir. 2021) ..............................................................2

*Fac., Alumni, & Students Opposed to Racial Preferences* v. *New York Univ.*,
  142 S. Ct. 2813 (2022) .....................................................................2

*Ferrelli* v. *State of N.Y. Unified Ct. Sys.*,
  2022 WL 673863 (N.D.N.Y. Mar. 7, 2022) .............................3, 8, 24

*Ferrelli* v. *State of New York*,
  No. 031506/2022.................................................................. *passim*

*Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*,
  288 F. Supp. 2d 273 (E.D.N.Y. 2003) .........................................23, 24

*Futia* v. *Westchester Cnty. Bd. of Leg.*,
  852 F. App'x 30 (2d Cir. 2021) .........................................................9

*Gallop* v. *Cheney*,
  642 F.3d 364 (2d Cir. 2011).............................................................23

*Garvey* v. *City of New York*,
  No. 85163/2022 (N.Y. Sup. Ct. Oct. 24, 2022) ..............................17

*Grand River Ents. Six Nations, Ltd.* v. *Boughton*,
  988 F.3d 114 (2d Cir. 2021).............................................................16

*Harlen Assocs.* v. *Vill. of Mineola*,
  273 F.3d 494 (2d Cir. 2001).....................................................13, 19

*Heidl* v. *Hochul*,
  2021 WL 4942823 (S.D.N.Y. Oct. 21, 2021) ..................................16

*Hopkins Hawley LLC* v. *Cuomo*,
  518 F. Supp. 3d 705 (S.D.N.Y. 2021)...............................................17

*Hu* v. *City of New York*,
  927 F.3d 81 (2d Cir. 2019)...............................................................14

iv

*Hurd* v. *Fredenburgh*,
    984 F.3d 1075 (2d Cir. 2021)...............................................................................13

*In re Bd. of Educ. of City Sch. Dist. of New York* v. *N.Y.S. Pub. Emp. Rels. Bd*,
    660, 667-68 (1990)............................................................................................25

*Jacobson* v. *Massachusetts*,
    197 U.S. 11 (1905)...............................................................................15, 16, 24

*Kane* v. *de Blasio*,
    19 F.4th 152, 159, 175-76 (2d Cir. 2021) .........................................................22

*Keil* v. *City of New*
    York, 2022 WL 619694 (2d Cir. Mar. 3, 2022)..................................................22

*L.K.* v. *Sewanhaka Cent. High Sch. Dist.*,
    641 Fed. App'x 56 (2d Cir. 2016).......................................................................24

*Lewis* v. *Casey*,
    518 U.S. 343 (1996)......................................................................................10, 22

*Lewis* v. *Cuomo*,
    575 F.Supp.3d 386 (W.D.N.Y. 2021) ................................................................10

*Lippman* v. *Pub. Emp. Rels. Bd.*,
    746 N.Y.S.2d 77 (3d Dep't 2002)............................................................. *passim*

*Lowrance* v. *Achtyl*,
    20 F.3d 529 (2d Cir. 1994).................................................................................16

*Maniscalco* v. *N.Y.C. Dep't of Educ.*,
    563 F. Supp. 3d 33 (E.D.N.Y. 2021) .....................................................14, 17, 20

*Marciano* v. *de Blasio*,
    589 F.Supp.3d 423 (S.D.N.Y. 2022).............................................................9, 18

*Marino* v. *City Univ. of New York*,
    18 F. Supp. 3d 320 (E.D.N.Y. 2014) .................................................................14

*Martinez* v. *Cnty. of Suffolk*,
    999 F. Supp. 2d 424 (E.D.N.Y. 2014) ...............................................................24

*Moxie Owl, Inc.* v. *Cuomo*,
    527 F. Supp. 3d 196 (N.D.N.Y. 2021)...............................................................20

*N.Y.C. Mun. Lab. Comm.* v. *City of New York*,
    156 N.Y.S.3d 681 (2021) ...............................................................................14, 15

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc.* v. *State,*
    336 F. Supp. 3d 50 (E.D.N.Y. 2018) ..................................................13

*Nike, Inc.* v. *Already, LLC,*
    663 F.3d 89 (2d Cir. 2011)...............................................................9

*Pearson* v. *Callahan,*
    555 U.S. 223 (2009)......................................................................24

*Performing Arts Ctr. of Suffolk Cnty.* v. *Actor's Equity Ass'n,*
    2022 WL 16755284 (E.D.N.Y. Aug. 25, 2022)...................................6

*Prince* v. *Cnty. of Nassau,*
    837 F. Supp. 2d 71 (E.D.N.Y. 2011) ..............................................13

*Prince* v. *Massachusetts,*
    321 U.S. 158 (1944)......................................................................15

*Ramsaroop* v. *Dep't of Educ. of City of New York,*
    2022 WL 376029 (S.D.N.Y. Feb. 8, 2022).......................................24

*Real Est. Bd. of N.Y., Inc.* v. *City of New York,*
    84 N.Y.S.3d 33 (1st Dep't 2018) .....................................................3

*Roberts* v. *N.Y.C. Office of Collective Bargaining,*
    976 N.Y.S.2d 450 (1st Dep't 2013) .................................................25

*Rodriguez* v. *New York,*
    644 F. Supp. 2d 168 (E.D.N.Y. 2008) ............................................23

*Romer* v. *Morgenthau,*
    119 F. Supp. 2d 346 (S.D.N.Y. 2000)..............................................24

*Rucho* v. *Common Cause,*
    139 S. Ct. 2484 (2019)....................................................................9

*Sanchez* v. *Turner,*
    2002 WL 1343754 (S.D.N.Y. June 19, 2022) ..................................13

*Starr* v. *Sony BMG Music Entm't,*
    592 F.3d 314 (2d Cir. 2010)............................................................9

*Steinberger* v. *Lefkowitz,*
    634 F. App'x 10 (2d Cir. 2015) .......................................................2

*Strong* v. *Zucker,*
    2022 WL 896525 (W.D.N.Y. Mar. 28, 2022).....................................9

*Strong* v. *Zucker*,
  582 F. Supp. 3d 65 (W.D.N.Y. Jan. 27, 2022).........................................................................21

*We The Patriots USA, Inc.* v. *Hochul (We the Patriots I)*,
  17 F.4th 266 (2d Cir. 2021), *reaff'd, We The Patriots II*, 17 F.4th 368 (2d Cir.
  2021) ................................................................................................................................15, 22

*Winston* v. *City of Syracuse*,
  887 F.3d 553 (2d Cir. 2018)..........................................................................................19, 20, 21

*Ziglar* v. *Abbasi*,
  137 S. Ct. 1843 (2017)..........................................................................................................24

*Zuckerman* v. *App. Div., Second Dep't., Sup. Ct. of State of N.Y.*,
  421 F.2d 625 (2d Cir. 1970)..................................................................................................12

**Statutes**

42 U.S.C. § 1983..............................................................................................................3, 4, 12

**Other Authorities**

New York State Constitution ..................................................................................... *passim*

Rule 12(b)(1).......................................................................................................................9, 10

Rule 12(b)(6)...........................................................................................................................9

U.S. Constitution..................................................................................................... *passim*

The New York State Unified Court System (the "UCS"), the New York State Office of Court Administration ("OCA"),[1] and former Chief Judge Janet DiFiore, former Chief Administrative Judge Lawrence K. Marks, Justin A. Barry, Nancy Barry and Carolyn Grimaldi (the "Individual Defendants" and, together with the UCS and OCA, "Defendants") respectfully submit this memorandum of law in support of Defendants' Motion to Dismiss Plaintiffs' Complaint.

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiffs are asking this Court to declare the UCS's vaccination policy unconstitutional and otherwise unlawful—an argument that has been soundly rejected by state and federal judges across New York State.  Contrary to Plaintiffs' transparently false protest that this case "does not involve the COVID-19 pandemic" and that "[t]he events of 2020" are "not relevant," the very policy Plaintiffs are seeking to enjoin was enacted *directly* in response to a deadly worldwide pandemic that exploded in early 2020 and continues to this day to present serious health and safety risks to New York residents and users of the State court system.  As Magistrate Judge Wicks astutely observed just three months ago in this very matter, while Plaintiffs have "take[n] near acrobatic attempts to distinguish this case" from the prior challenges to the UCS's vaccine policy, "the essence of [Plaintiffs'] claims here is not meaningfully different from the earlier challenges elsewhere[,] [a]nd all those attempts have been uniformly unsuccessful."  ECF No. 13 at 6.  This Court should likewise dismiss this case.

The UCS handles nearly four million cases a year in courts located across the State.  For over two years now, the COVID-19 pandemic has severely jeopardized the UCS's ability to honor its core, constitutionally mandated mission of ensuring public court access.  In the face of this

---

[1] References to the UCS in this brief encompass the OCA, its administrative arm.

unprecedented and ongoing public health crisis, the UCS, like so many other government agencies and employers across the country, took action.  More specifically, in accordance with guidance from well-established state and national public health authorities, the UCS required its employees to be vaccinated in order to safely reopen the courts in furtherance of its constitutional public access obligations (the "Vaccination Policy" or the "Policy").  The UCS also developed a process for employees to seek medical and religious exemptions from the Policy, which are in turn subject to a multilayered review by a diverse and independent committee (the "Committee").  A vast majority of the UCS's employees have now obtained the COVID-19 vaccine, minimizing infection rates in the court system and enabling the UCS to gradually reinstate in-person operations.  Today, although the widespread availability of safe and effective vaccines has allowed certain COVID-19-related restrictions to be modified or even in some cases lifted, infection rates remain high and the virus continues to evolve into new variants with unknowable consequences.

This case—brought by five named UCS employees who failed to either complete the exemption request forms or provide a sincerely held religious belief plus a non-profit organization whose incorporation has not been approved by the State—represents a *fifth* attempt by a small minority of UCS employees to challenge the Policy in court.  Four prior attempts, which raised substantially similar or even identical arguments to those raised here, were soundly rejected by four different judges, and one was unanimously affirmed on appeal.[2]

---

[2]    *Ferrelli* v. *State of New York*, No. 031506/2022, NYSCEF 74, at 22 (N.Y. Sup. Ct. Aug. 2, 2022) ("*Ferrelli II*"), Coughlin ECF No. 11-7; *Brignall* v. *N.Y.S. Unified Ct. Sys.*, No. E2022-0241CV, NYSCEF 57, at 22–23 (N.Y. Sup. Ct. Apr. 13, 2022) ("*Brignall*"), Coughlin ECF No. 11-6; *Ferrelli* v. *State of N.Y. Unified Ct. Sys.*, 2022 WL 673863, at *9 (N.D.N.Y. Mar. 7, 2022) ("*Ferrelli I*"), Coughlin ECF No. 11-5; *Civ. Serv. Emps. Ass'n, Inc.* v. *N.Y. State Pub. Emp. Rels. Bd.*, 157 N.Y.S.3d 675, 695 (N.Y. Sup. Ct. 2021) ("*CSEA*"), Coughlin ECF No. 11-3, *aff'd, In re Civ. Serv. Emps. Ass'n, Inc., Loc. 1000, AFSCME, AFL-CIO* v. *N.Y. State (Unified Ct. Sys.)*, No. 534183, NYSCEF 24 (3rd Dep't Oct. 28, 2021) ("*CSEA Appeal*"), Coughlin ECF No. 11-4.

In addition to these decisions by New York courts sustaining the Policy against legally and factually meritless challenges, courts across the country have also upheld vaccine mandates implemented by public and private employers.

Like these other actions, Plaintiffs' Complaint asserts a grab bag of claims:  violations of federal and New York State constitutions under the Guarantee Clause (First Cause of Action); separation of powers violations under the New York State Constitution (Second Cause of Action); substantive due process violations under Section 1983 (Third, Seventh, and Eighth Causes of Action); Section 1985(3) violations (Fourth Cause of Action); Breach of Contract (Fifth Cause of Action); and procedural due process violations under Section 1983 (Sixth and Seventh Cause of Action).  And, like their predecessors, the claims here should all be dismissed:

*First*, Plaintiffs allege that the UCS lacks statutory and constitutional authority to issue the Policy, asserting claims under the federal and New York State constitutions.  In fact, as courts upholding the Policy have already held, the UCS is explicitly empowered by the New York State Constitution to "establish standards and administrative policies for general application throughout the state."  N.Y. Const. art. VI, § 28.  The Policy—enacted in furtherance of the UCS's core mission to provide the public with court access—was authorized by that provision as well as the UCS's inherent authority to enact regulations to manage its workforce.

*Second*, Plaintiffs assert claims under 42 U.S.C. § 1983, alleging that the Policy violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment and parallel provisions of the New York State Constitution.  Claims against UCS and OCA must be dismissed because these entities are not "persons" within the meaning of 42 U.S.C. § 1983.  The claims against the Individual Defendants in their official capacities must be dismissed because they are considered to be claims against the state and therefore barred by the Eleventh Amendment.

Plaintiffs fail to state a due process claim because they do not allege a constitutionally protected liberty or property interest at stake and, in any event, the UCS did not arbitrarily infringe on any such interest; to the contrary, the Policy by its terms provides employees with notice and opportunity to be heard.  Moreover, it is established law that due process rights may be limited by policies enacted to address a public health crisis, which is obviously present here.  Nor do Plaintiffs state an equal protection claim, as the Policy rationally distinguishes among unvaccinated and vaccinated employees and furthers the legitimate goals of stemming the spread of COVID-19 in the court system and preserving access to the courts.

*Third*, Plaintiffs' conspiracy claim fails because under controlling law, the officers, agents and employees of a single public entity acting within the scope of their employment are legally incapable of conspiring with each other.  This claim also fails because Plaintiffs do not identify a predicate constitutional violation or plead plausible facts to support the required elements of a conspiracy claim.  Furthermore, the Individual Defendants here are entitled to qualified immunity.

*Fourth*, Plaintiffs' breach of contract claim fails because Plaintiffs lack standing to enforce the collective bargaining agreements that are the subject of this claim.  What is more, the Complaint fails to identify any contractual obligation that Defendants supposedly breached, and could not plausibly do so because the UCS was empowered to unilaterally implement the Policy in the face of a global health pandemic.

## BACKGROUND

**A.     The COVID-19 Public Health Pandemic Substantially Disrupted the UCS's Ability to Provide Safe and Accessible Courthouses in Accordance with its Core Mission.**

UCS courts adjudicate approximately four million cases a year at more than 300 sites across New York State.  The UCS's core mission is to provide the public with access to a court

system that provides a safe forum to timely resolve all matters.  (*See* Compl. at ¶ 34.) Thousands of non-judicial UCS employees help fulfill that mission.

In the face of the COVID-19 health crisis, the UCS was, for a period of time, forced to halt most in-person operations other than emergency matters.  When the UCS began to return to limited in-person staffing, the UCS took several interim safety measures, including requiring masking, social distancing and testing.  (*See* Compl. at ¶ 73.)  Throughout this period, the UCS followed the guidance of respected federal and state health authorities, including the Centers for Disease Control and Prevention ("CDC") and the New York State Department of Health ("NYDOH").

**B.    The UCS Imposed a Vaccination Policy to Ensure Continued Public Access During the Pandemic.**

After COVID-19 vaccinations had received emergency use authorizations from the U.S. Food and Drug Administration (the "FDA"), the CDC recommended that adults without a medical contraindication should get vaccinated.   Consistent with public health guidance the UCS encouraged employees to be vaccinated and subsequently required employee vaccinations so as to safely resume in-person court operations.  (*See* Compl. at ¶¶ 94–99).  The UCS explained the Vaccination Policy to its employees in detail and provided information regarding the process for religious and medical exemptions.  (*See* Compl. ¶¶ 94–100.)  In adopting the Policy, the UCS did not require members of the public—such as lawyers, litigants, journalists and criminal defendants—be vaccinated to access the court system.  (*See* Compl. ¶ 106.)

**C.    The UCS's Policy Provides for Medical and Religious Exemptions.**

The Vaccination Policy includes a process for religious and medical exemption requests, which are reviewed by an independent Committee on a blind and confidential basis.  (*See* Compl. ¶¶ 148, 155, 156, 166.)  Employees seeking religious exemptions must submit a form explaining the reasons for the request, and may be asked to provide supplemental information.  (*See* Compl.

¶ 58, 60, 63, 66, 68, 71.)  The UCS provided clear directions that incomplete exemption forms would not be considered.  (Declaration of Gregory F. Laufer ("Laufer Decl.") Ex. 8 at 1; Ex. 10 at 4; Ex. 11 at 2; Ex. 15 at 2.)[3]  The religious exemption requests are subject to multiple levels of review by a sub-group of the Committee and the full Committee.  Employees seeking medical exemptions must submit a form explaining the reasons for the request and a note from their physician confirming a medical condition that makes it unsafe to receive a COVID-19 vaccination.  (Laufer Decl. Ex.. 7; Ex. 12; Ex. 13.)

Employees who are unvaccinated and have an approved medical or religious exemption are required to submit proof of a negative COVID-19 test on a weekly basis.  (Compl. ¶ 117.)  If an employee whose request is denied does not get vaccinated, the employee is asked to stay home.  (*See* Compl. ¶ 116.)

> ### D.   Named Plaintiffs' Medical and Religious Exemption Requests Were Appropriately Denied.

The named Plaintiffs here submitted religious and/or medical exemption requests.  (Laufer Decl. Exs. 6–15.)[4]  All five named Plaintiffs' religious exemption requests were denied because Plaintiffs either failed to complete the exemption request forms and/or failed to identify a sincerely held religious belief, as opposed to a personal preference, which formed the basis for their

---

[3]   Exhibits referenced herein are properly incorporated for review on a motion to dismiss as "(1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint 'relies heavily' and which are, thus, rendered 'integral' to the Complaint."  *Performing Arts Ctr. of Suffolk Cnty.* v. *Actor's Equity Ass'n*, 2022 WL 16755284, at *1 (E.D.N.Y. Aug. 25, 2022) (internal citation omitted), report and recommendation adopted, 2022 WL 4977112 (E.D.N.Y. Sept. 30, 2022); *see also Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152–153 (2d Cir. 2002).

[4]   Plaintiffs' exemption request forms are particularly appropriate for the Court's consideration on a motion to dismiss; the forms are "incorporated by reference in the Complaint" and "are integral to the Complaint" as the pleading relies "heavily" on them.  *Benny* v. *City of Long Beach*, 2021 WL 4340789, at *10 (E.D.N.Y. Sept. 23, 2021) (citations omitted).

objections to obtaining the COVID-19 vaccination.  (Laufer Decl. Ex. 6 at 1–3; Ex. 8 at 3–6; Ex. 9 at 3–6; Ex. 10 at 3–6; Ex. 11 at 2-7; Ex. 14 at 3; Ex. 15 at 3-5; *see* Compl. ¶¶ 53, 58, 60, 63, 66, 68, 71, 75, 155.)  Plaintiffs Coughlin and Thompson, who additionally sought a medical exemption from the Policy, also failed to complete the required forms, identify any medical condition that would make it unsafe for them to receive the COVID-19 vaccine or provide the requisite signed doctors' notes in support of their requests.  (Laufer Decl. Ex. 7 at 3-6; Ex. 12 at 3-9; Ex. 13 at 5–7.)

> ### E.   New York Courts Have Already Rejected Similar Challenges to the UCS's Policy.

Five courts in New York—including in an action brought by Plaintiff Zweig, among other UCS employees—have already rejected claims and arguments similar to those Plaintiffs have advanced here.

More specifically, the New York Supreme Court denied 10 UCS unions' motion to preliminary enjoin the Policy, decisively rejecting the argument that the UCS's decision to implement it without engaging in collective bargaining constituted irreparable harm to noncompliant UCS employees, *CSEA*, 157 N.Y.S.3d at 694–95, Coughlin ECF No. 11-3, a ruling unanimously affirmed by the New York Appellate Division, Third Department.  (*CSEA* Appeal, No. 534183, Coughlin ECF No. 11-4 (3d Dep't Oct. 28, 2021).)

The U.S. District Court for the Northern District of New York denied a motion to enjoin the Policy on the ground that it violated the plaintiffs' First Amendment rights, holding that the Policy, including its religious exemption process, was constitutional both on its face and as applied to plaintiffs, UCS employees whose religious exemption requests had been denied.  (*Ferrelli I*, 2022 WL 673863, at *6–9, Coughlin ECF No. 11-5.)

Two other groups of UCS employees filed Article 78 Petitions seeking to invalidate the Policy on the grounds that the UCS lacked authority to issue it and violated their rights under the New York and federal constitutions.  The court in *Brignall* dismissed one petition, holding that the UCS had the requisite authority to issue the Policy and that the Policy did not violate the First or Fourteenth Amendments of UCS employees, thereby dismissing claims under the Due Process and Equal Protection Clauses.  (*Brignall*, NYSC3F 57 at 13–14, 21–22, Coughlin ECF No. 11-6.) Drawing similar conclusions, the *Ferrelli II* court dismissed the other challenge by UCS employees against the Policy.  (*Ferrelli II*, NYSCEF 74, at 16, 19, 22, Coughlin ECF No. 11-7.)

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide grounds supporting the claim through "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).  A court will not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  As Plaintiffs' Complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," it should be dismissed with prejudice.  *Starr* v. *Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570); *see also, e.g.*, *Marciano* v. *de Blasio*, 589 F.Supp.3d 423, 436-437 (S.D.N.Y. 2022) (dismissing challenge to New York City COVID-19 vaccination requirement); *Strong* v. *Zucker*, 2022 WL 896525, at *6 (W.D.N.Y. Mar. 28, 2022) (same for New York State Department of Health's COVID-19 vaccine requirements).

Courts dismiss cases for "lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc.* v. *Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation and citation omitted).  The party invoking

the court's jurisdiction bears the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Broidy Capital Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 443 (2d Cir. 2019).

I.      **The Court Should Dismiss Plaintiffs' Guarantee Clause Claim for Lack of Subject Matter Jurisdiction Because It Presents a Non-Justiciable Political Question.**

Count One of the Complaint asserts a claim under the Guarantee Clause.  That count should be dismissed because the Guarantee Clause generally "does not provide the basis for a justiciable claim."  *Futia* v. *Westchester Cnty. Bd. of Leg.*, 852 F. App'x 30, 32 (2d Cir. 2021) (internal citation and quotation omitted); *see also Rucho* v. *Common Cause*, 139 S. Ct. 2484, 2506 (2019) ("This court has several times concluded, however, that the Guarantee Clause does not provide a basis for a justiciable claim.").  Accordingly, Plaintiffs' claim that the UCS could not implement the Policy as an exercise of its constitutionally delegated authority to administer State courts, N.Y. Const. art. VI § 28, "should be dismissed under Rule 12(b)(1) as raising a non-justiciable political question."  *Lewis* v. *Cuomo*, 575 F.Supp.3d 386, 399 (W.D.N.Y. 2021) (dismissing "Guarantee Clause" challenge to New York State COVID-19 restrictions).

II.     **The Court Should Dismiss Plaintiffs' Allegations of Article III Violations Because the UCS Appropriately Exercised its Authority in Implementing the Policy.**

Plaintiffs' first and second causes of action alleging that the UCS lacked authority to enact the Policy should be dismissed for failure to state a claim because (1) as a matter of law, the UCS authorized to issue the Policy, and (2) the Policy neither implicates nor violates separation-of-powers principles.

*The UCS Was Authorized to Implement the Policy*.   Contrary to Plaintiffs' allegations, the UCS is authorized—and, in fact, obligated—to enact measures, such as the Vaccination Policy, that protect the health and safety of its workforce and court users.  The UCS properly issued the Policy pursuant to its constitutionally delegated broad supervisory authority to "establish standards and administrative policies for general application throughout the state."  N.Y.

Const. art. VI § 28.  As *Brignall* and *Ferrelli II* correctly recognized, the UCS appropriately exercised its authority to issue the Policy.  *Brignall*, NYSC3F 57 at 5, Coughlin ECF No. 11-6; *Ferrelli II*, NYSCEF 74, at 21, Coughlin ECF No. 11-7.  Furthermore, the U.S. Courts of Appeals and the U.S. Supreme Court have consistently identified a fundamental constitutional right of public access to the courts.  *See, e.g.*, *Clement* v. *Durban*, 91 N.Y.S.3d 342, 348 (2018); *Lewis* v. *Casey*, 518 U.S. 343, 350–51 (1996); U.S. Const. amend. I, V, VI, XIV; N.Y. Const. art. I, VI.  As several courts have held in rejecting prior challenges to the UCS' authority to issue the Policy, the UCS has a "constitutionally delegated authority to enact policies that enable it to meet its constitutional obligations of facilitating public access to the courts."  *Brignall*, NYSCEF 57 at 4–5, Coughlin ECF No. 11-6; *Ferrelli II*, NYSCEF 74, at 20, Coughlin ECF No. 11-7; *see also Lippman* v. *Pub. Emp. Rels. Bd.*, 746 N.Y.S.2d 77, 81 (3d Dep't 2002).

   ***The Policy Does Not Implicate, Let Alone Violate, Separation-of-Powers Principles***.  Plaintiffs' second cause of action, which challenges the Policy because it was promulgated by the Judiciary and not the Legislature (Compl. ¶¶ 19–29), has no legal basis.  As a threshold matter, the UCS is not a state agency to which the New York legislature delegates authority; rather, the UCS is a coequal, independent branch of government with its own inherent and constitutional authority.  Accordingly, the Policy—which affects only the UCS—does not intrude on any other branch of government and thereby entails no separations of power concerns.

   Further, Plaintiffs have improperly conflated the separation-of-powers principle with the power of individual employers to enact workplace vaccination requirements for their own employees.  Public employers like the UCS are authorized to unilaterally implement "terms and conditions of employment" that "are inherently and fundamentally policy decisions relating to the primary mission of the public employer."  *Bd. of Educ. of City Sch. Dist. of City of New York* v.

*N.Y.S. Pub. Emp. Rels. Bd.*, 75 N.Y.2d 660, 669 (N.Y. 1990).  Because the UCS has power to hire

and direct its workforce, the UCS was not required to have any express grant of statutory authority

to enact the Policy, particularly when coupled with the "clear national and state public policy to

combat the health threats posed by COVID-19."  *Matter of City of Newark*, 264 A.3d 318, 327

(N.J. Super. Ct. 2021) (holding City had inherent authority to issue workforce vaccine mandate).

The UCS acted well within its authority to implement the Vaccination Policy after determining it

was necessary to achieve the UCS's "defining mission" of "provid[ing] an accessible forum to every

litigant." *Lippman*, 746 N.Y.S.2d at 85; *see also Brignall*, NYSCEF 57 at 5, Coughlin ECF No.

11-6; *Ferrelli II*, NYSCEF 74, at 20–21, Coughlin ECF No. 11-7.

## III.     The Court Should Dismiss Plaintiffs' Allegations of Section 1983 Violations Because Plaintiffs Either Cannot or Have Failed to State a Claim.[5]

Plaintiffs' third, sixth, seventh, and eighth causes of action under 42 U.S.C. § 1983 should

be dismissed because Plaintiffs fail to allege the required elements to state a claim under the Due

Process and Equal Protection Clauses.

---

[5]   All of the claims by Plaintiff NYS Court Employees Against Mandates LTD ("NYSCEAM") should be independently dismissed for lack of standing.  NYSCEAM has not pleaded any facts to establish that "'its members have standing to sue in their own right,'" and that "the interests it seeks to protect are germane to [NYSCEAM]'s purpose." *Fac.* v. *New York Univ.*, 11 F.4th 68, 75 (2d Cir. 2021), cert. denied *sub nom. Fac., Alumni, & Students Opposed to Racial Preferences* v. *New York Univ.*, 142 S. Ct. 2813 (2022) (affirming dismissal of lawsuit by unincorporated association for failure to establish that the association's members suffered injury in fact where association did not "name names" and proffered a "statistical probability" of injury).  NYSCEAM has also failed to establish that "neither the claim asserted nor the relief requested requires the participation of individual members." *See id.*  Indeed, NYSCEAM does not even identify its organizational purpose in the Complaint or establish that it has individual plaintiffs as its members, which runs afoul of the "long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings." *Steinberger* v. *Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (dismissing suit for lack of standing because plaintiff failed to assert facts plausibly alleging entitlement to requested relief); *see also Real Est. Bd. of N.Y., Inc.* v. *City of New York*, 84 N.Y.S.3d 33, 37 (1st Dep't 2018) (affirming dismissal of advocacy organization's lawsuit for lack of standing because organization failed to demonstrate that its interests in the litigation were germane to its purposes).

**A.    Plaintiffs' Section 1983 Claims Are Barred Because Defendants Are Improper Parties.**

As an initial matter, Plaintiffs' Section 1983 claims against the UCS and OCA are barred because those entities are not "persons" within the meaning of the statute. *Brignall*, NYSCEF 57 at 16, Coughlin ECF No. 11-6 (dismissing Section 1983 claim against UCS as "it is not a 'person' within the meaning of [42 USC 1983]"); *Brown* v. *N.Y.S. Unified Ct. Sys*., 261 F. App'x 307, 307–08 (2d Cir. 2008) (same as against the UCS and OCA); *see also Zuckerman* v. *App. Div.*, *Second Dep't., Sup. Ct. of State of N.Y.*, 421 F.2d 625, 626 (2d Cir. 1970) (same as against the New York Appellate Division, Second Department).

To the extent Plaintiffs' Section 1983 claims purport to seek monetary damages from the Individual Defendants in their official capacities, the claims are barred by the Eleventh Amendment.  *Cramer* v. *Pyzowski*, 2007 WL 1541393, at *5 (E.D.N.Y. May 25, 2007) (dismissing claims against defendants in their official capacities because such claims are "barred by the Eleventh Amendment").  Under established case law, such claims "are considered to be a claim against the State." *Id.* (citing *Kentucky* v. *Graham*, 473 U.S. 159, 169 (1985) (holding that "the Eleventh Amendment bars [] damages [] against a State in federal court", including "when State officials are sued for damages in their official capacity" which would impose a liability on the state).

Finally, to the extent Plaintiffs seek prospective relief, their claims against Nancy Barry and Justin Barry in their official capacities should also be dismissed because the Complaint does not plead facts showing that either of those individuals has a sufficient connection with the enforcement of the Policy, *i.e.*, that they each have a particular duty to enforce the Policy and a

demonstrated willingness to exercise that duty.  *See, e.g.*, *Chrysafis* v. *James*, 534 F. Supp. 3d 272, 292–93, 298 (E.D.N.Y. 2021); *see also, e.g.*, *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc.* v. *State*, 336 F. Supp. 3d 50, 69–70 (E.D.N.Y. 2018).  Plaintiffs have pled no plausible facts to establish that either Mr. Barry or Ms. Barry has authority to enforce the Policy or to institute adverse employment consequences due to non-compliance with the Policy.  As *Brignall* correctly found in evaluating identical claims, that deficiency is fatal.  *See Brignall*, NYSCEF 57 at 17, Coughlin ECF No. 11-6.

### B.    Plaintiffs Have Not Adequately Alleged That the Vaccination Policy Violated Their Rights or Is Arbirary and Capricious Under the Due Process Clause.

#### 1.    Plaintiffs' Substantive Due Process Claims Fail.

Plaintiffs' third and seventh causes of action alleging the Policy violates their substantive due process rights fail because the Complaint fails to plausibly allege that (i) there is a constitutionally protected liberty or property interest at stake and (ii) Defendants infringed on the interest arbitrarily or irrationally.  *See Hurd* v. *Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021); *see also, e.g.*, *Harlen Assocs.* v. *Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001); *Doe* v. *Franklin Square Union Free Sch. Dist.*, 568 F. Supp. 3d 270, 288–89 (E.D.N.Y. 2021).  Plaintiffs' claim under the New York Constitution's Due Process Clause, N.Y. Const. Art. I, § 6, fails "for the same reason[s]" that their claim under its federal analog fails. [6]  *Prince* v. *Cnty. of Nassau*, 837 F. Supp. 2d 71, 107–08 (E.D.N.Y. 2011) (dismissing state and federal due process claims); *see, e.g.*,

---

[6]    The few narrow circumstances in which the New York Constitution's Due Process Clause offers greater protections than its federal counterpart are not present in this action, nor do Plaintiffs make any allegations in the Complaint that they are.  *See Sanchez* v. *Turner*, 2002 WL 1343754, at *9 & n.12 (S.D.N.Y. June 19, 2022) ("[P]laintiffs are not criminal defendants, and there is no question the action being taken is state action.") (citing *Sharrock* v. *DellBuick–Cadillac, Inc.*, 45 N.Y.2d 152, 159–61 (1978).

*DeMartino* v. *N.Y.S. Dep't of Labor*, 167 F. Supp. 3d 342, 373–74 (E.D.N.Y. 2016) (citing *Oneida Indian Nation of N.Y.* v. *Madison Cnty.*, 665 F.3d 408, 427 n.13 (2d Cir. 2011)).

   ***Plaintiffs Cannot Identify a Protected Interest***.   Neither of the interests Plaintiffs allege the Policy implicates—"continued employment" and "fundamental right to control their cellular biology," (Compl. ¶¶ 36, 41)—satisfies their pleading burden because neither is "fundamental or implicit in the concept of ordered liberty."  *Maniscalco* v. *N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33, 38 (E.D.N.Y. 2021); *see also, e.g.*, *Doe*, 568 F. Supp. 3d at 288-89 (denying preliminary injunction for mask mandate where plaintiff failed to show a fundamental right at issue).

   More specifically, Plaintiffs' allegation that the Policy violates an alleged property interest in continued employment is meritless because "property interests related to employment are not among protected fundamental rights," *N.Y.C. Mun. Lab. Comm.* v. *City of New York*, 156 N.Y.S.3d 681, 689 (2021) (citing *Walker* v. *City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010)), including "continued public employment."   *Maniscalco*, 563 F. Supp. 3d at 39 (rejecting substantive due process challenge to vaccine mandate because continued employment in specific occupation was not protected interest).  Indeed, "the right of occupational choice is afforded Due Process protection only when a plaintiff is completely prohibited from engaging in his or her chosen profession."  *Hu* v. *City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (quotations and citations omitted); *see also, e.g.*, *Marino* v. *City Univ. of New York*, 18 F. Supp. 3d 320, 339 (E.D.N.Y. 2014) (no due process violation where defendants' "actions made it more difficult" to practice chosen profession); *Maniscalco*, 563 F. Supp. 3d at 38–39.  Plaintiffs have not alleged facts showing that the Policy "completely prohibit[s] [them] from engaging in their chosen profession."  *Brignall*, NYSCEF 57 at 19, Coughlin ECF No. 11-6 (dismissing substantive due process challenge to the Policy because continued employment was not constitutionally protected

interest); *Ferrelli II*, NYSCEF 74 at 18, Coughlin ECF No. 11-7 (same).  Rather, the UCS gives employees "a choice" to become vaccinated, request an exemption, or seek employment elsewhere.  *Id.*

There is likewise no merit to Plaintiffs' allegations that they possess an "absolute right to refuse" vaccination and that any protected interest they may have in what they describe as their "cellular" and "molecular biology" trumps the UCS's legitimate and reasonable interest in safeguarding the public against disease.  (Compl. ¶ 38, 40.)  The right to privacy can be reasonably restrained to protect public health, and "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We The Patriots USA, Inc.* v. *Hochul (We the Patriots I)*, 17 F.4th 266, 293 (2d Cir. 2021), *reaff'd, We The Patriots II*, 17 F.4th 368, 370–71 (2d Cir. 2021); *Jacobson* v. *Massachusetts*, 197 U.S. 11, 25–30 (1905); *Prince* v. *Massachusetts*, 321 U.S. 158, 166–67 (1944) (holding constitutional rights "do[] not include liberty to expose the community or the child to communicable disease or the latter to ill health or death"); *N.Y.C. Mun. Lab. Comm.*, 156 N.Y.S.3d at 686 (collecting cases).  As *Ferrelli II* correctly held, "the UCS[] has the right to implement a vaccine mandate in order to control the outbreak of a disease 'without violating the liberty secured by the Fourteenth Amendment.'"  NYSCEF 74, at 18, Coughlin ECF No. 11-7 (quoting *C.F.* v. *N.Y.C. Dep't of Health & Mental Hygiene*, 139 N.Y.S.3d 273, 287 (2d Dep't 2020)).

***Plaintiffs Fail to Allege the Policy Is Arbitrary or Irrational***.  Even if Plaintiffs had shown that a fundamental right or interest is at issue—which they have not—Plaintiffs have not adequately alleged facts showing that the Policy is "'arbitrary, conscience-shocking, or oppressive in the constitutional sense.'"  *Bimber's Delwood, Inc.* v. *James*, 496 F. Supp. 3d 760, 781

(W.D.N.Y. 2020) (quoting *Kaluczky* v. *City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)).  To

meet this high bar, Plaintiffs must plausibly allege that the Policy constitutes "the exercise of power

without any reasonable justification in the service of a legitimate governmental objective."  *Cnty.*

*of Sacramento* v. *Lewis*, 523 U.S. 833, 846 (1998); *see also Grand River Ents. Six Nations, Ltd.* v.

*Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) (holding government action "rationally related to a

legitimate state interest" does not violate substantive due process); *Lowrance* v. *Achtyl*, 20 F.3d

529, 537 (2d Cir. 1994) (noting even "incorrect or ill-advised" government action does not offend

the Due Process Clause).  The government may subject constitutional rights to "reasonable

conditions" deemed essential to the health and safety of the community.  *Jacobson*, 197 U.S. at

26; *see Brignall*, NYSCEF 57, at 19, Coughlin ECF No. 11-6; *see also, e.g.*, *Ass'n of Jewish Camp*

*Operators* v. *Cuomo*, 470 F. Supp. 3d 197, 215 (N.D.N.Y. 2020) (holding plaintiffs were unlikely

to succeed on due process challenges to COVID-19 executive orders) (quoting *Jacobson*, 197 U.S.

at 31).

　　　　Plaintiffs' argument falters on a fundamental hurdle:  they fail to allege facts showing that

the Policy was not reasonably justified in service of a legitimate government objective.  Nor could

they credibly do so; the Policy was "based on scientific and medical information in an effort to

protect the public health and safety against a novel, society-threatening virus."  *Bimber's Delwood*,

496 F. Supp. 3d at 781 (rejecting due process challenge to COVID-19 restrictions); *see also Heidl*

v. *Hochul*, 2021 WL 4942823, at *12 (S.D.N.Y. Oct. 21, 2021) (holding plaintiffs could not

"plausibly allege that the [COVID-19] measures lacked a real and substantial relationship to the

goal of containing the virus"); *Maniscalco*, 563 F. Supp. 3d at 39–40 (holding no due process

violation where city determined vaccination mandate was the best means of protecting students in

light of CDC guidance); *Doe*, 568 F. Supp. 3d at 292 (finding mask mandate "clearly satisfy[ied]

16

the rational basis review standard); *Hopkins Hawley LLC* v. *Cuomo*, 518 F. Supp. 3d 705, 715 (S.D.N.Y. 2021) (holding COVID-19 business restrictions made based on public health guidance "simply do not satisfy the high bar that is the 'shock the conscience' standard"); *Columbus Ale House, Inc.* v. *Cuomo*, 495 F. Supp. 3d 88, 93–94 (E.D.N.Y. 2020) (holding plaintiffs failed to show COVID-19 restrictions were arbitrary under Due Process Clause); *Jewish Camp Operators*, 470 F. Supp. 3d at 226–27 (same).

Moreover, as *Brignall* found, the UCS is legally permitted to institute polices that may limit rights in response to a society-threatening epidemic when the measures have a real and substantial relation to the public health crisis.  NYSCEF 57, at 19, Coughlin ECF No. 11-6.  The Policy plainly reflects scientific evidence from public health authorities demonstrating that, although COVID-19 vaccination cannot entirely stop the spread of COVID-19, it does significantly reduce the likelihood an individual will get infected or infect another person.  The UCS's determination that employee vaccination was the best means for it to keep the courts open to the public and safe for UCS employees in the face of a global health pandemic is likewise rational.  Plaintiffs' mere disagreement with these measures is irrelevant, particularly given their failure to allege facts demonstrating that the Policy is "arbitrary, conscience-shocking, or oppressive in the constitutional sense." *Bimber's Delwood, Inc.*, 496 F. Supp. 3d at 781.[7]

---

[7]   This case is materially different from *Garvey* v. *City of New York*, No. 85163/2022 (N.Y. Sup. Ct. Oct. 24, 2022), because there, the court found the vaccine mandate—applicable to only employees of New York City but not to private employees or those in certain designated professions—was arbitrary and capricious because it imposed differing vaccination requirements on similarly situated employees without any cogent explanation and without regard to the public health statistics on COVID-19 infection rates in New York City.  Here, among other things, the Policy applies to *all* UCS employees.

## 2.       Plaintiffs' Procedural Due Process Claims Fail.

Plaintiffs' sixth and seventh causes of action alleging that the Policy violates their procedural due process rights should be dismissed because Plaintiffs have not identified a legally cognizable liberty or property interest or pled facts showing the deprivation of any such interest without constitutionally adequate process. *Broecker* v. *N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 311  (E.D.N.Y. 2022) (citing *O'Connor* v. *Pierson*, 426 F.3d 187, 185–96 (2d Cir. 2005)). Process is adequate if it includes "notice and opportunity to respond." *Marciano*, 589 F. Supp. 3d at 436 (quoting *O'Connor*, 426 F.3d at 198); *see also Brignall*, NYSCEF 57, at 20–21, Coughlin ECF No. 11-6.

As addressed *supra* Section III.B.1, Plaintiffs have not identified a constitutionally protected interest.  Nor have Plaintiffs alleged facts showing that they lacked notice and opportunity to respond before the Policy was implemented.  In August 2021, the UCS announced it would require all its employees to be vaccinated, and followed this announcement with communications to employees providing details about the Policy, such as the requirements to complete the exemption process and the potential disciplinary consequences of failure to comply with the Policy absent an approved exemption. *See* Compl. ¶¶ 99, 148, 155, 156, 166.  The UCS permitted employees, including Plaintiffs, to submit documentation and explanations of their exemption requests through a detailed process with multiple layers of review.  *Supra* Sections C, D.  The UCS specified that exemption request forms must be fully completed.  Laufer Decl. Ex..8 at 1; Ex. 10 at 4; Ex. 11 at 2; Ex. 15 at 2.  Given that employees were notified of the Policy well in advance of its effective date and could access a robust exemption process, as the *Brignall* and *Ferrelli II* court correctly found, Plaintiffs "were provided sufficient notice and afforded an opportunity to be heard" and "fail to articulate how such a process was constitutionally

inadequate." *Brignall*, NYSCEF 57, at 21, Coughlin ECF No. 11-6; *Ferrelli II*, NYSCEF 74, at 18, Coughlin ECF No. 11-7.

C. **Plaintiffs' Equal Protection Claim Should Be Dismissed Because There is No Suspect Class and the Policy Easily Survives Rational Basis Review.**

Plaintiffs' eighth cause of action should be dismissed because the Complaint fails to allege that the Policy "burdens a fundamental right [or] targets a suspect class."[8] *Winston* v. *City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018) (quoting *Romer* v. *Evans*, 517 U.S. 620, 631 (1996)). Plaintiffs allege the Policy makes impermissible distinctions between vaccinated and unvaccinated persons (including those who have received religious exemptions or have some measure of natural immunity from a prior COVID-19 infection) and between UCS employees and non-employees who enter UCS facilities. Neither classification—vaccination or employment status—is recognized as a suspect classification that would trigger strict scrutiny. *See City of Cleburne, Tex.* v. *Cleburne Living Ctr.*, 473 U.S. 432, 440–41 (1985) (listing classifications subject to strict scrutiny).

Nor do Plaintiffs argue that the Policy implicates any fundamental right or is subject to strict scrutiny on any other basis. Accordingly, rational basis review applies. *See Winston*, 887 F.3d at 560 (2d Cir. 2018); *see also Brignall*, NYSCEF 57, at 22, Coughlin ECF No. 11-6 (holding

---

[8] Even if a challenged policy does not draw a distinction on a constitutionally protected characteristic, a plaintiff may still pursue "an equal protection claim on one of two theories: selective enforcement or 'class of one.'" *Bunn* v. *City of Poughkeepsie*, No. 10 Civ. 2297 (PAE), 2012 WL 1621563, at *3 (S.D.N.Y. May 9, 2012) (citations omitted); *see also Cobb* v. *Pozzi*, 363 F.3d 89, 109 (2d Cir. 2004). Plaintiffs have not asserted either theory, but even if they had, their claims would be meritless: both claims require a plaintiff "to adduce evidence demonstrating that he was, in fact, treated differently from similarly situated comparators." *Bunn*, 2012 WL 1621563, at *3; *see also, e.g.*, *Harlen Assocs.* v. *Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). For the reasons discussed *infra*, Plaintiffs have not and cannot make such a showing: the Policy applies equally to all UCS employees, and any potential distinctions the Policy draws between unvaccinated versus vaccinated employees and members of the public versus UCS employees are entirely rational.

rational basis review applies because the Policy neither burdens a fundamental right nor targets a suspect class and validly applies to all UCS employees).

### (a)      The Policy Survives Rational Basis Review.

Plaintiffs bear the burden to show the classification lacks any rational basis and to "negate[] every conceivable basis which might support the Vaccine Mandate."  *Andre-Rodney* v. *Hochul*, 569 F. Supp. 3d 128, 135–37 (N.D.N.Y. 2021) (holding equal protection challenge unlikely to succeed); *see also, e.g.*, *Moxie Owl, Inc.* v. *Cuomo*, 527 F. Supp. 3d 196, 203 (N.D.N.Y. 2021) (same).  Under rational basis review, which is "highly deferential," *Winston*, 887 F.3d at 560, a challenged policy is presumptively constitutional and "will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose," as numerous courts considering equal protection challenges to COVID-19 safety policies have held.  *Maniscalco* v. *N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33, 41 (E.D.N.Y. 2021) (denying equal protection claim because vaccine mandate rationally served ends of keeping schools open and reducing COVID-19 transmission), *aff'd*, 2021 WL 4814767 (2d Cir. Oct. 15, 2021) (quoting *Kadrmas* v. *Dickinson Pub. Sch.*, 487 U.S. 450, 457–58 (1988); *see, e.g.*, *Bryant* v. *N.Y. State Educ. Dep't*, 692 F.3d 202, 219 (2d Cir. 2012) (noting a policy should be upheld if "there is any reasonably conceivable state of facts that could provide a rational basis for the classification").

Here, the Policy easily survives rational basis review as Plaintiffs cannot plausibly allege that there is no "reasonably conceivable state of facts that that could provide a rational basis for the classification[s]" the Policy makes between vaccinated versus unvaccinated individuals and/or UCS employees versus non-employees.  *Winston*, 887 F.3d at 561 (quoting *FCC* v. *Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

***The Policy Makes Rational Distinctions***.   As other courts upholding vaccination requirements under the Equal Protection Clause have held, "the distinction [the Policy] draw[s] between vaccinated and non-vaccinated persons has an amply rational basis." *Abadi* v. *City of New York*, 2022 WL 347632, at *9 (S.D.N.Y. Feb. 4, 2022); *see also Strong* v. *Zucker*,  582 F. Supp. 3d 65, 72 & n.6 (W.D.N.Y. Jan. 27, 2022) (holding no equal protection violation where defendants presented "substantial evidence of the medical and scientific bases" for COVID-19 measures that distinguished between vaccinated and unvaccinated persons).  Most UCS employees work in person in the court system and are necessarily in close contact for long hours with one another and members of the public in indoor, congregate settings.  (*See* Compl. ¶ 124.)  Plaintiffs cannot meaningfully dispute that public health guidance provides that vaccinated individuals have a lower risk of becoming infected with COVID-19 infection or transmitting the virus to others compared with unvaccinated individuals.  The Policy rationally protects UCS employees and members of the public, particularly those with preexisting conditions that make them especially vulnerable to the virus.

Likewise, there is a rational basis for applying the Policy to UCS employees but not to members of the public:  the UCS has a constitutional obligation to provide members of the public with access to the courts.  *See supra* Section II; *see also Lippman*, 746 N.Y.S.2d at 85 (UCS's "defining mission" is "provid[ing] an accessible forum to every litigant.")  Imposing a requirement that members of the public who enter UCS facilities and are not UCS employees be vaccinated would have barred some individuals—including criminal defendants whose presence at the court is compelled—from accessing the courts, in violation of the public's right to court access under the U.S. and New York State Constitutions.  U.S. Const. amend. I, VI, XIV; N.Y. Const. art. I, VI; *see, e.g.*, *Lewis* v. *Casey*, 518 U.S. 343, 350–51 (1996); *Clement* v. *Durban*, 91 N.Y.3d 342, 348

(2018).  Further, courts have repeatedly upheld workplace COVID-19 vaccination mandates that apply only to employees and do not extend to members of the public as rational under the Equal Protection Clause.  *E.g.*, *We the Patriots I*, 17 F.4th at 272, 296 (2d Cir. 2021) (upholding denial of equal protection challenge to vaccine mandate that applied to healthcare workers but not to patients or visitors of healthcare facilities); *Kane* v. *de Blasio*, 19 F.4th 152, 159, 175–76 (2d Cir. 2021), *reaff'd*, *Keil* v. *City of New* York, 2022 WL 619694 (2d Cir. Mar. 3, 2022) (upholding vaccine mandate that applied to city DOE employees and contractors but not students or visitors to DOE facilities as valid under Equal Protection Clause).

   ***The Policy Is Rationally Related to Serving Legitimate Goals***.  The Policy is rationally related to serving the legitimate goals of stemming the spread of COVID-19 in the court system and ensuring the UCS meets its constitutional "obligation to provide safe access to justice for everyone." *Ferrelli II*, NYSCEF 74, at 20, Coughlin ECF No. 11-7.  Because an outbreak among UCS employees could cause staffing shortages that would hamper the UCS's ability to maintain in-person operations, enacting the Policy is consistent with public health guidance that indicates vaccination demonstrably "slows infection rates and reduces the spread of the disease," *Clementine*, 2021 WL 5756398, at *16, and "where the disease is thereafter contracted, stands to mitigate the severity of its symptoms." *Abadi*, 2022 WL 347632, at *8 (rejecting equal protection challenge to vaccine mandate).  As two courts have previously held when evaluating the Policy at issue here, "[p]reventing the spread of the novel and potentially fatal COVID-19 virus, both to protect the general public and to help facilitate the safe re-opening of public courthouses, is rationally related to the requirement that all UCS employees receive the vaccination." *Ferrelli II*, NYSCEF 74, at 12, Coughlin ECF No. 11-7; *see also Brignall*, NYSCEF 57, at 22, Coughlin ECF

No. 11-6 (holding "the Vaccination Policy has a rational relation to the legitimate goal of curbing COVID-19 in UCS facilities").

**IV.     Plaintiffs' Section 1985(3) Claim Should Be Dismissed as It Lacks Any Legal Basis.**

Plaintiffs' fourth cause of action alleging that Defendants conspired to deprive them of civil rights in implementing the Policy's religious exemption review process fails because the Individual Defendants, all of whom acted within the scope of their employment in connection with the Policy, cannot be liable for conspiracy, and the Complaint fails to plausibly allege the required elements of a Section 1985(3) claim.  Qualified immunity also protects the Individual Defendants.

*First*, courts in the Second Circuit generally reject claims alleging a conspiracy among employees with a common employer because "officers, agents, and employees of a single corporate or public entity, each acting within the scope of [their] employment, are legally incapable of conspiring with each other." *Rodriguez* v. *New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008) (citing *Farbstein* v. *Hicksville Pub. Library*, 254 F. App'x. 50, 51 (2d Cir. 2007)).  As Plaintiffs do not allege that the Individual Defendants acted outside the scope of their employment, this claim must be dismissed.

*Second*, Plaintiffs plead no plausible facts demonstrating the required elements of a conspiracy claim.  Instead, the Complaint pleads only "conclusory, vague, or general allegations," which "cannot withstand a motion to dismiss."  *Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (dismissing Section 1985(3) conspiracy claim).  In particular, "the complaint does not include any facts that could support an inference of a conspiracy among the various defendants" and "cite[s] no facts from which a meeting of the minds could be inferred." *Friends of Falun Gong* v. *Pac. Cultural Enter., Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003).  Nor do Plaintiffs plausibly allege that Defendants committed any act in furtherance of the conspiracy that deprives them of any rights.  *Martinez* v. *Cnty. of Suffolk*, 999 F. Supp. 2d 424, 431 (E.D.N.Y. 2014); *see*

also, e.g., *L.K.* v. *Sewanhaka Cent. High Sch. Dist.*, 641 Fed. App'x 56, 59 (2d Cir. 2016); *Romer* v. *Morgenthau*, 119 F. Supp. 2d 346, 364 (S.D.N.Y. 2000). And, critically, the Complaint fails to allege a "predicate constitutional right" that the Policy violates. *Friends of Falun Gong*, 288 F. Supp. 2d at 279. The Constitution does not prohibit states from imposing generally applicable vaccination laws to protect public health, *Jacobson*, 197 U.S. at 12, and Plaintiffs fail to allege any other constitutional right that the Policy violates. *See supra* Section III.B.1.

Even if Plaintiffs adequately alleged a conspiracy under Section 1985(3), as government officials, the Individual Defendants are entitled to qualified immunity unless Plaintiffs can show they violated a clearly established law. *See Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1866 (2017); *see also, e.g., Pearson* v. *Callahan*, 555 U.S. 223, 231 (2009); *Alharbi* v. *Miller*, 368 F. Supp. 3d 527, 568 (E.D.N.Y. 2019). Plaintiffs have not identified any clearly established law that the Individual Defendants violated in implementing the Policy's religious exemption review process. On the contrary, the exemptions review process has been upheld as constitutional by multiple New York courts. *See Ferrelli I*, 2022 WL 673863, at *6–9; *Brignall*, NYSCEF 57, at 13–14, 21–23, Coughlin ECF No. 11-6; *Ferrelli II*, NYSCEF 74, at 16, 18, 22, Coughlin ECF No. 11-7.

## V.     Plaintiffs' Breach of Contract Claim Should Be Dismissed Because Plaintiffs Lack Standing and Fail to State a Claim.

Plaintiffs' fifth cause of action alleges that the Policy is a breach of collective bargaining agreements between the UCS and its employees. This too must be dismissed. To start with, it is well-settled law that Plaintiffs, as individual employees, lack standing to enforce such collective bargaining agreements. *See, e.g., Ramsaroop* v. *Dep't of Educ. of City of New York*, 2022 WL 376029, at *10 (S.D.N.Y. Feb. 8, 2022) (dismissing plaintiff's breach of contract claim because "[i]t is settled that only the union can initiate a breach of contract claim" on a collective bargaining agreement); *Biehner* v. *City of New York*, 2021 WL 878476, at *7 (S.D.N.Y. March 9, 2021)

24

(same).  Nor have Plaintiffs pleaded any facts demonstrating that they fall into a recognized exception.  *Id.*  Indeed, ten unions that represent various groups of UCS employees have already brought—and lost—actions alleging the Policy breached their collective bargaining agreements.  *See CSEA*, 157 N.Y.S.3d at 676, Coughlin ECF No. 11-3.

Even if Plaintiffs had standing, the Complaint should be dismissed because it "fail[s] to adequately plead a claim for breach of contract."  *DeFlora Lake Dev. Assocs., Inc.* v. *Park*, 654 F. App'x 9, 10 (2d Cir. 2016); *see also, e.g.*, *Brooklyn 13th St. Holding Corp.* v. *Nextel of N.Y., Inc.*, 2011 WL 694582, at *3 (E.D.N.Y. Dec. 30, 2011).  Plaintiffs' claim that the UCS violated provisions that prohibit either party from unilaterally modifying their collective bargaining agreements is legally baseless because it ignores well-settled New York law that authorizes the UCS to unilaterally implement policies that relate to an important constitutional responsibility, *In re Bd. of Educ. of City Sch. Dist. of New York* v. *N.Y.S. Pub. Emp. Rels. Bd*, 75 N.Y.2d 660, 667– 68 (1990); *see also Roberts* v. *N.Y.C. Office of Collective Bargaining*, 976 N.Y.S.2d 450, 454 (1st Dep't 2013), or that inherently and fundamentally relate to its primary mission, *see Lippman* v. *Pub. Emp. Rels. Bd.*, 746 N.Y.S.2d 77, 84 (3d Dep't 2002); *see also Buffalo Tchrs. Fed'n, Inc.* v. *Bd. of Educ. of City Sch. Dist.*, 142 N.Y.S.3d 736, 749 (N.Y. Sup. Ct. 2021) (holding school board's re-opening plan during COVID-19 pandemic was fundamental policy decision exempt from bargaining requirement).  The UCS did not violate any obligation under the parties' collective bargaining agreement in implementing the Policy given that the Policy serves the UCS's important constitutional responsibility and primary mission to provide "an accessible forum to every litigant seeking redress."  *Lippman*, 746 N.Y.S.2d at 81 (3rd Dep't 2002).

## **CONCLUSION**

The Court should grant Defendants' motion to dismiss and dismiss Plaintiffs' complaint with prejudice.

Dated: January 18, 2023
      New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP

By:  */s/ Gregory Laufer*
      Gregory F. Laufer

Bruce Birenboim
Liza M. Velazquez
Gregory F. Laufer
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
bbirenboim@paulweiss.com
glaufer@paulweiss.com
lvelazquez@paulweiss.com

Lina Dagnew
2001 K Street, NW
Washington, D.C. 20006
Phone: (202) 223-7455
ldagnew@paulweiss.com

*Attorneys for Defendants*
*New York State Unified Court System, New*
*York State Office Of Court Administration,*
*(former) Chief Judge Janet DiFiore, (former)*
*Chief Administrative Judge Lawrence K.*
*Marks, Justin A. Barry, Nancy Barry, and*
*Carolyn Grimaldi*