**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KIM COUGHLIN, ANNE GALLAGHER, DONNA
NOYCE, TAYLER THOMPSON  and NYS COURT
EMPLOYEES AGAINST MANDATES LTD

        Plaintiffs,


     -against-

                                 No 2:22-CV-04002

NEW YORK STATE UNIFIED COURT SYSTEM,
NEW YORK STATE OFFICE OF COURT
ADMINISTRATION, CHIEF JUDGE JANET DIFIORE *in
her official administrative capacity as Chief Judge,* CHIEF
ADMINISTRATIVE JUDGE LAWRENCE K. MARKS, *in
his official capacity,* JUSTIN BARRY *in his official
capacity as Chief of Administration,* NANCY BARRY *in
her official capacity as Chief of Operations*, CAROLYN
GRIMALDI, *in her official capacity as Director of Human
Resources.*


        Defendants

---

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


LAW OFFICE OF CHAD J. LAVEGLIA PLLC
262 RXR Plaza, Suite #613
Uniondale, New York 11556
(631) 450-2468
Claveglia@cjllaw.org

*Attorneys for Plaintiffs*

i

TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................................**2**

Let Justice Be Done Though the Heavens May Fall ....................................................................................... 2
A Small Town Lawyer and Future Assemblyman Beat the Odds ................................................................... 2
The United States and New York State Constitution Must Prevail Despite the Outcome ........................... 3
Mandates and Fear........................................................................................................................................ 4
The Unified Court System Wrote the Book on Public Health Emergencies: Mandatory Vaccinations Are Not in It. ...... 5

**I.      THIS COURT SHOULD DENY THE MOTION BECAUSE DEFENDANTS DO NOT ADDRESS THE FACTUAL ALLEGATIONS IN THE COMPLAINT BUT RATHER REPLACE THEM WITH STRAW MAN FACTS TO PROP UP THEIR INVALID LEGAL ARGUMENTS.** ...........................................................................................................................**7**

Defendants Fatally Erase and Replace the Facts Plead. ............................................................................... 7
Defendants Cite Precedent Where the Facts Were Not Tested in the Adversarial Process. ........................ 8
This Court Should Disregard Defendants' Exhibits. ...................................................................................... 9

**II.     DEFENDANTS FAIL TO EXTINGUISH THE GUARANTEE CLAUSE CLAIM** ...............................................**10**

Legal Framework ......................................................................................................................................... 10
This Court Had Subject Matter Jurisdiction Over the First Cause of Action Invoking the Guarantee Clause ............ 11

**III.    DEFENDANTS DO NOT PROVE THAT PLAINTIFFS FAILED TO STATE A CAUSE OF ACTION FOR THEIR EQUAL PROTECTION CLAIMS.** .........................................................................................................................**13**

Defendants Challenge the Equal Protection Claims Using Unpled Facts. ................................................... 13
Defendants Fail Because They Lack a Compelling Governmental Interest. ................................................ 13
Alternatively Plaintiffs Equal Protection Causes of Action are Plausible. .................................................. 14
Second Theory of Selective Enforcement ................................................................................................... 15

**IV.     PLAINTIFFS SEPARATION OF POWERS CLAIM IS PLAUSIBLE.** ...........................................................**16**

**V.      PLAINTIFFS HAVE ASSOCIATIONAL STANDING** ...............................................................................**18**

**VI.     DEFENDANTS MISCONSTRUE PLAINTIFFS SUBSTANTIVE DUE PROCESS CLAIM AND IT IS PLAUSIBLE.** ........**19**

**VII.    PLAINTIFFS CLAIM UNDER THE DEPRIVATION CLAUSE OF §1985(3) IS PLAUSIBLE.** ................................**21**

**VIII.   STATE DUE PROCESS** ....................................................................................................................**23**

**IX.     DEFENDANTS HAVE NOT SHOWN QUALIFIED IMMUNITY** ................................................................**23**

**X.      PLAINTIFFS SECTION 1983 CLAIMS ARE AGAINST THE PROPER PARTIES** ...........................................**24**

**XI.     CONCLUSION** ............................................................................................................................**24**

TABLE OF AUTHORITIES

<u>CASES</u>

.   *Myers v. United States*, 272 U.S. 52, 176, [1926]--------------------------------------------------------14

Abadi v. City of New York, 2022 WL 347632, at *9 [S.D.N.Y. 2022]----------------------------16

Adv. Digital Sec. Sols., Inc v. Samsung Techwin Co., 862 N.Y.S. 2d 551, 552 [2d Dept 2008] 11

Anderson v. Bessemer City, 470 U.S. 564 [1985] ----------------------------------------------12

Anderson v. Recore, 317 F.3d 194, [2d Cir.2003]. ----------------------------------------------27

Andre-Rodney v. Hochul, 569 F.Supp 3d 128 [N.D.N.Y. 2021] ----------------------------------16

Ashcroft v Iqbal, 556 U.S. 662  [2009] ------------------------------------------------------ 10, 13

Attorney General of Michigan ex rel. Kies v. Lowrey, 199 U.S. 233 [1905] ----------------------15

Baker v. Carr 369 U.S. 186 [1962]. ------------------------------------------------------------5, 14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, [2007]. -----------------------------------------13

Benzman v. Whitman, 523 F.3d 119, [2d Cir.2008]-----------------------------------------------27

Bimber's Delwood, Inc v. James, 496 F. Supp.3d 760 [N.D.N.Y. 2020]. ----------------- 16, 24

Bldg. and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev., Inc.,
   448 F.3d 138, [2d Cir. 2006] --------------------------------------------------------------------22

Britt v. Garcia, 457 F.3d 264, 270 n.4 [2d Cir. 2006] -----------------------------------------24

Bryant v. New York state educ. Dep't, 692 F.3d 202, 217 [2d Cir. 2012]. -----------------------22

Colombrito v. Kelly, 764 F.2d 122 [2d Cir. 1985]-----------------------------------------------24

Connick v. Myers, 461 U.S. 138, (1983) ---------------------------------------------------------20

Cortec Industries Inc. V. Sum Holding LP., 949 F.2d 42 ,[2d Cir. 1991].------------------------12

Cruzan v. Director, Missouri Department of Health, 497 U.S. 261 [1990]------------------------23

Cunney v. Bd. Of Trustees of Village of Grand View, N.Y., 660 F.3d 612, [2d Cir. 2011] ------23

Dandamudi v. Tisch, 686 F.3d 66, 72 [2d Cir. 2012]. ------------------------------------------23

Demetriou v. New York State Dept. of Health, 162 N.Y.S.3d 673 [ Sup. Ct.  Nassau County,
   2022] ---------------------------------------------------------------------------------------------19

Faculty v. New York University, 11 F.4th 68, [2d Cir. 2021]. ---------------------------------21

Forsyth v. Hammond, 166 U.S. 506 [1897]-------------------------------------------------------15

Frazee v Illinois Department of Employment Security, 489 US 829[1989]----------------------26

Freytag v. Commissioner, 501 U.S. 868, 878 [1991]------------------------------------------14

Green v. McLaughlin, 480 Fed.Appx. 44, [2d Cir. 2012]--------------------------------------25

Guichard v. Town of Brookhaen, 26 F. Supp.3d 219, [E.D.N.Y. 2014] ----------------------26

Heller v. doe, 509 U.S. 312, 320 [1993]---------------------------------------------------------18

Hernandez v Commissioner, 490 US 680, [1989]--------------------------------------------------26

Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019] ---------------------------------------------------18

Immaculate Heart Central School v. The New York State High School Athletic Association, 797
    F.Supp.2d 204 [N.D.N.Y. 2011]----------------------------------------------------------------------19

In re Duncan, 139 U.S. 449 [1891]-----------------------------------------------------------------------15

In re Thelen LLP, 736 F.3d 213,[2d Cir. 2013].-----------------------------------------------------16

Jennings v. City of Stillwater, 383 F.3d 1199, 1214 [10th Cir. 2004] --------------------------------18

Kane v de Blasio, 19 F4th [*6]at 168; --------------------------------------------------------------------26

Keyishian v. Board of Regents of Univ. of State of N. Y., 385 U.S. 589, [1967];------------------20

Lane v. Franks, 573 U.S. 228, 236 (2014) ---------------------------------------------------------------20

Largess v. Supreme Judicial Court for State of Massachusetts, 373 F.3d 219 [1st  Cir. 2004] ---15

LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, (2d Cir. 1995) ------------------------------------------25

Lynch v. City of New York et al., 952 F.3d 67, [2d Cir. 2018]. ------------------------ 10, 12, 13, 21

Maniscalco v. N.Y.C. Dep't of Educ., 563 F. Supp. 3d 33, [E.D.N.Y. 2021]-----------------------16

Marbury v. Madison, 1 Cranch 137, 177 [1803]. ---------------------------------------------------------14

Matter of New York State Criminal Defense Lawyers v. Kaye, 96 N.Y.2d 512, 517 [2001]-----19

McKenna v. Wright, 386 F.3d 432,[2d Cir.2004]---------------------------------------------------------26

McMinn v. Town of Oyster Bay, 66 N.Y.2d 544 [1995] ------------------------------------------------26

Mendez v. Dinkins, 226 A.D.2d 219[1st Dept 1996]. -----------------------------------------------------17

Mid-State Mgmt. Corp. v. N.Y.C. Conciliation & Appeals Bd., 491 N.Y.S.2d 634, 637 [1st Dept.
    1985] ---------------------------------------------------------------------------------------------------------11

Moore v. East Cleveland, 431 U.S. 494 [1977]-----------------------------------------------------------23

Moore v. East Cleveland, 431 U.S. 494 [1977];-----------------------------------------------------------23

Morrison v. Olson, 487 U.S. 654[1988] -------------------------------------------------------------------15

N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, [E.D.N.Y. 2002].------------------------------------22

New York v. U.S., 505 U.S. 144,[1992]-------------------------------------------------------------------15

NFIB v. OSHA 595 U.S. ___ [2022] ----------------------------------------------------------------------20

Our Wicked Lady LLC v. Cuomo, 2021 WL 915033, *4 [S.D.N.Y. 2021]------------------------20

Plessy v. Ferguson, 163 U.S. 537, 563-564, [1896] ----------------------------------------------------15

Reynolds v. Sims, 377 U.S. 533, [1964] -------------------------------------------------------------------15

Rivers v. Katz, 67 N.Y.2d 485, 495 [1986] ---------------------------------------------------------------17

Romer v. Evans, 517 U.S. 620, [1996] --------------------------------------------------------------------18

Simpson v. Uniondale Union Free Sch. Dist., 702 F.Supp.2d 122, [E.D.N.Y. 2010]. -------------25

Smith v. Hogan, 794 F.3d 249, [2d Cir. 2015] ----------------------------------------------------12

Spencer v. Casavilla, 903 F.2d 171,[2d Cir. 1990].----------------------------------------------25

Strong v. Zucker, 582 F.Supp. 3d 65, 72 [W.D.N.Y. 2022] ----------------------------------11

Taravella v. Town of Wolcott, 599 F.3d 129, [2d Cir.2010].---------------------------------27

Ventresca-Cohen v. DiFiore, 77 Misc. 3d 652 [Sup Ct. Albany County, 2022] -------------------19

W. Virginia v. Envtl. Protec. Agency, 142 S.Ct. 2587 [June 30, 2022]----------------------------15

Walker v. City of Waterbury, 361 F.Appx 163, 165 [2d Cir. 2010]. --------------------------------22

Washington v. Glucksberg, 521 U.S. 702 [1997] ----------------------------------------------23

Webb v. Goord, 340 F.3d 105, [2d Cir. 2003]------------------------------------------------25

Winston v. City of Syracuse, 887 F.3d 553, 560 [2d Cir. 2018] ------------------------------------18

Zhang Jingrong v. Chinese Anti-Cult World All., 287 F. Supp. 3d 290, [E.D.N.Y. 2018]--------25

Zivotofsky ex rel. Zivotofsky v. Clinton, 566 US. 189, [2012] --------------------------------------14

STATUTES

§ 1985(3)----------------------------------------------------------------------------------------24

Fed R Civ P 10[c]----------------------------------------------------------------------------11

Fed. R. civ. P. 12(b)(1)---------------------------------------------------------------------13

Fed. R. Civ. P. 12(b)(6) ---------------------------------------------------- 10, 12, 13, 27

NY Judiciary Law -------------------------------------------------------------------------20

Rule 12(b)(6) ------------------------------------------------------------------------------10

CONSTITUTIONAL PROVISIONS

N.Y. Const art III § I ------------------------------------------------------------------------19

Tenth Amendment------------------------------------------------------------------------14

UNPUBLISHED OPINIONS

Brignall v. N.Y.S. Unified Ct. Sys., No. E2022- 0241CV [U], ---------------------------------11

Ferrelli v. State of New York, No. 031506/2022 [U], ----------------------------------------11

<u>PRELIMINARY STATEMENT</u> [1]

**Let Justice Be Done Though the Heavens May Fall**

Defendants are not really testing the complaint's legal sufficiency. They are attacking the merits. Defendants evade well pleaded facts, improperly assert their own facts, and disregard the applicable law. Defendants endeavor to prove their positions are correct as opposed to establishing that Plaintiffs failed to state a cause of action. Presumably, Defendants expect this Court to simply go along with it. After all, UCS is a juggernaut and Plaintiffs are small. Blinded by hubris, Defendants ironically forget that the power of the law—in the right hands—can foster change across the nation.

**A Small Town Lawyer and Future Assemblyman Beat the Odds**

In 1962, future New York State Assemblyman Bill Bianchi sued the Board of Supervisors of Suffolk County. The young, inexperienced lawyer representing Mr. Bianchi, fearlessly challenged the Republican party's nearly two hundred (200) year political monopoly in Suffolk County. In the wake of the Supreme Court's decision in Baker v Carr. the young lawyer saw an opportunity to bring real democracy to Suffolk County. One where the will of the people is decided after robust debate between elected officials from two, separate political parties. This young lawyer intrinsically knew—as did the Framers—that one party rule inevitably ends in corruption.

The young lawyer and his client faced significant obstacles. The obstacles were not related to the merits of the case. Their legal argument was strong. Instead, they faced political obstacles. The young lawyer could have enriched himself and avoided hardship. All he had to do was register as

---

[1] In the sections leading up to the arguments section, Plaintiffs depart from traditional legal writing as a necessity. External factors such as the divisiveness of the pandemic, politics, the media, and the defendants' influence put the plaintiffs at a severe disadvantage. Plaintiffs must therefore address many uncomfortable truths. Plaintiffs provide numerous examples throughout in support of the "bold" statements made in this section. Plaintiffs do not intend to cast aspersions on any of the defendants or counsel.

a Republican. It would have been easy. But he did not take the easy route. Maintaining this Country's democratic republic is not easy either. The young lawyer believed in the Constitution's guarantee of equal representation. He passionately believed that this country flourishes when the laws governing society represent the will of the people. He knew that the cause was bigger than himself.

The young lawyer ultimately prevailed. After almost six (6) years of litigation and arguing before the United States Supreme Court, the Second Circuit Court of Appeals unanimously held that the "one person, one vote" principle applied to all levels of elected government—including Suffolk County.  This young lawyer affected change across the nation. In the end, the rule of law prevailed over power and politics.

**The United States and New York State Constitution Must Prevail Despite the Outcome**

About sixty-one (61) years since Bianchi v. Board of Supervisors of Suffolk County was commenced, Plaintiffs find themselves in a similar—albeit more complicated—situation. Everyone experienced COVID-19. However, the facts surrounding it are heavily disputed. Further, it would be naïve to assume this Court does not have its own personal views. Unlike every summary proceeding commenced before this action, Plaintiffs do not ask this Court to make findings of fact related to COVID-19. Indeed, out of the eight (8) causes of action asserted by Plaintiffs, they seek declaratory judgments for only two (2). Plaintiffs assert their constitutional right to have a jury find the facts pled in support of the remaining causes of action.

Dismissing this complaint would be the easy way out. Plaintiffs respectfully ask the young lawyer who represented Bill Bianchi sixty-one (61) years ago to unyieldingly adhere to the same principles now, as he did back then. Behind the façade of power, the defendants grasp at straws. Plaintiffs' complaint is legally sufficient, and the well pleaded facts should be presented to a jury.

Like the Bianchi case, the implications here are far reaching. It is bigger than any of us. If the highest-ranking members of the UCS could issue edicts like the Mandate, then representative democracy is illusory.

### Mandates and Fear

"Fear is the greatest enemy to reason." [2] Former Chief Judge Janet DiFiore (DiFiore) crowned herself with the power to make public health decisions for every judicial and non-judicial employee across the State of New York[3]. In response to a virus omnipresent in every public place people gather, DiFiore imposed her personal views favoring permanent inoculation on every OCA employee.

In dictator like fashion, DiFiore ignored the supreme law of the land and punished dissenters. She did not consult with the administrative board or get the approval of the entire Court of Appeals.[4] Thus, the label of "vaccine policy" is legally incorrect. It is a pure mandate (Mandate). In addition, DiFiore acted without the requisite police power conferred by the Tenth Amendment. It is incontrovertible that the Mandate exceeded the scope of OCA's power. Still, no one dared to question the Queen. Court of Appeals Associate Judge Jenny Rivera was not even spared from being public vilification.

DiFiore quickly made an example out of Justice Rivera by exiling her from the bench and ordering Marks to lodge a complaint with the Commission on Judicial Conduct.[5]  When an esteemed, Associate Justice of the Court of Appeals cannot defend herself from the former Chief

---

[2] Al Gore

[3] DiFiore abruptly resigned after this action was commenced amidst allegations of misusing funds for her private security detail and attempting to influence a tribunal in a disciplinary proceeding. Marks abruptly resigned a few months thereafter.

[4] * NY Const art. VI § 28[a], § 28[c] provides that standards and administrative policies—after consulting with an administrative board comprised of the Chief Judges presiding over each appellate division—"shall be promulgated after approval by the court of appeals."

[5] https://nypost.com/2022/04/06/ny-judge-jenny-rivera-could-get-booted-for-refusing-covid-vax/ (accessed February 3, 2023).

Judge, then how could Plaintiffs? Lead by DiFiore, the remaining Defendants weaponized the OCA.

**The Unified Court System Wrote the Book on Public Health Emergencies: Mandatory Vaccinations Are Not in It.**

Former Chief Justice Jonathan Lippman wrote the book detailing the full legal scope of the judiciary's function in response to an outbreak of a contagious disease (Manual).[6] The Manual exhaustively covers the scope of the government's power and responsibilities in the wake of a public health emergency. Chief Judge Lippman had the foresight in 2011 to prevent the exact type of unlawful conduct that occurred here. But the UCS of today ignored the well laid plans of yesterday. Chief Judge Lippman opened up with the following:

> "In today's world, we face many natural and man-made catastrophic threats, including the very real possibility of a global influenza outbreak or other public health emergency that could infect millions of people. While it is impossible to predict the timing or severity of the next public health emergency, our government has a responsibility to anticipate and prepare for such events. An important element of this planning process is advance coordination between public health authorities and our judicial and legal systems. The major actors in any public health crisis must understand the governing laws ahead of time and must know what their respective legal roles and responsibilities are. What is the scope of the government's emergency and police powers? When may these be invoked, and by which officials? What are the rights of people who may be quarantined or isolated by government and public health officials? These questions must be researched and answered now—not in the midst of an emergency—so that the responsible authorities have a readymade resource to help them make quick, effective decisions that protect the public interest. This New York State Public Health Legal Manual is designed to serve this purpose. It will be an absolutely essential tool in guiding us through the effective management of future public health disasters."

---

[6] (Chief Judge Jonathan Lippman, *New York State Public Health Legal Manual* [2011] Chapter X, available at https://www.nycourts.gov/whatsnew/pdf/publichealthlegalmanual.pdf [last accessed March 13, 2023] ) (prepared in conjunction with the: New York State Bar Association, NYS Department of Health, NYC Department of Health and Mental Hygiene)

The Manual proscribes the judiciary's role under the law to classic administrative functions such as relocating courts (*id.* at §1.117), case management in emergencies (*id.* at §1.120), remote appearances (*id.* §1.124) and finally, protection of court personnel (*id.* §1.127). The final section is illustrative. DiFiore, Marks, and Defendants had other plans though.

The Manual unequivocally demonstrates how far astray the defendants have gone—from the law and the real core values of the UCS. Furthermore, the Manual is more persuasive than the unpublished opinions—of Defendant's employees. The current UCS deviated from the law and instituted the Mandate on its own volition, without any authority and in deprivation of Plaintiffs Constitutional rights. The defendant's misconduct here is completely repugnant to the UCS, jurists like Chief Judge Lippman and Chief Judge Judith S. Kaye, built as a model for courts across the country.

The Mandate and its implementation provide the grounds for all eight (8) causes of action. Defendants now move this Court to dismiss the entire complaint. Yet, Defendants dodge the facts plead so frequently; this Court cannot seriously consider their motion to be challenging Plaintiffs complaint. The entirety of Defendants motion rests upon facts that exist nowhere in the complaint. Even worse, Plaintiffs plead facts that are in stark contrast to what the defendants assert here.

# ARGUMENT [7]

I.   **THIS COURT SHOULD DENY THE MOTION BECAUSE DEFENDANTS DO NOT ADDRESS THE FACTUAL ALLEGATIONS IN THE COMPLAINT BUT RATHER REPLACE THEM WITH STRAW MAN FACTS TO PROP UP THEIR INVALID LEGAL ARGUMENTS.**

### Defendants Fatally Erase and Replace the Facts Plead.

Defendants cannot prevail unless this Court accepts their baseless recitation of facts over those in the complaint. Indeed, Defendants only reference the complaint fifteen (15) times (Def. Memo). Ten (10) of the fifteen (15) references are in their "Background" section (*Id.* at pp 5-7). The remaining five (5) references are scant, and distorted. Defendants do not establish that Plaintiffs failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Rather, they argue that the facts—as they believe them to be—are legally insufficient.  They commit procedural homicide. As such, Defendants do not make it through the threshold.

It is beyond well settled that in deciding a Rule 12 (b) (6) motion to dismiss this Court is bound to accept all factual allegations in the complaint as true. Ashcroft v Iqbal, 556 U.S. 662, 678 [2009]. Furthermore, this Court's "task is to assess the legal feasibility of the complaint; it is not to assess the weight of evidence that might be offered by either side: Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." Lynch v. City of New York et al., 952 F.3d 67, 75 [2d Cir. 2018]. "The choice between or among plausible inferences or scenarios is one for the factfinder. . .. [it] is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.* Defendants ask this Court to ignore well settled law and accept their inferences because the complaint is sufficient otherwise.[8]

---

[7] Plaintiffs object to Defendants Preliminary Statement, Background section, exhibits and all assertions of fact outside the four corners of the complaint. Plaintiffs request that the Court not consider it.  Further, Plaintiff's note that the defendants glaringly misquote and distort facts attributable to them. Plaintiffs object accordingly.

[8] Defendants' procedural abuses are so numerous that Plaintiffs could dedicate 25 pages solely to that subject.  Since Plaintiffs are constrained to 25 pages and do not wish to waste this Court's time, Plaintiffs address only a few but object to, and dispute the few portions of the complaint Defendants' quote as misleading, deceiving, and false.

For instance, Defendants assert that ". . . vaccinated individuals have a lower risk of becoming infected with COVID-19 infection or transmitting the virus to others compared with unvaccinated individuals" to attack the Equal Protection Clause claims. (Def. Memo p 21). But Plaintiffs allege that vaccination neither reduces the chance of being infected nor prevents the transmission of the virus. (Compl. ¶¶187-195).[9] In any event, this is a triable issue of fact to be decided by a jury *see* Strong v. Zucker, 582 F.Supp. 3d 65, 72 [W.D.N.Y. 2022] (stating It is not within the court's province to substitute their judgment for that of public health authorities"). Therefore, Defendants cannot claim that matters of fact plead have been decided as a matter of law.

**Defendants Cite Precedent Where the Facts Were Not Tested in the Adversarial Process.**

Defendants bootstrap their arguments with a shoestring. Cases like Brignall v. N.Y.S. Unified Ct. Sys., No. E2022- 0241CV [U], and Ferrelli v. State of New York, No. 031506/2022 [U], are meaningless because—all other infirmities aside—they were commenced as summary proceedings. As such, those courts were constrained from engaging in factfinding. *See* Adv. Digital Sec. Sols., Inc v. Samsung Techwin Co., 862 N.Y.S. 2d 551, 552 [2d Dept 2008] (stating that injunctive relief should not be granted where facts are in dispute or questions of facts would undermine the moving party's ability to ultimately succeed); Mid-State Mgmt. Corp. v. N.Y.C. Conciliation & Appeals Bd., 491 N.Y.S.2d 634, 637 [1st Dept. 1985] (asserting that the court may not substitute its judgment for that of the administrative agency in an Article 78 action).  The instant action, in contrast, presents disputed facts. Therefore, Defendants lose as matter of law since Plaintiffs dispute every material facts Defendants counter with.

---

[9] Since Plaintiffs have no way of knowing what, if any, medical studies this Court has read, Plaintiffs proffer the following to only serve as an example of Plaintiff's good faith basis and for no other purpose:
(Elsevier LTD: *Past SARS-CoV-2 infection protection against re-infection: a systematic review and meta-analysis,* [2023] available online at https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(22)02465-5/fulltext [last accessed March 16, 2023]).
(New England Journal of Medicine, *Bivalent Covid-19 Vaccines-A Cautionary Tale,* [2023] available at https://www.nejm.org/doi/full/10.1056/NEJMp2215780 [last accessed March 16, 2023]).

8

**This Court Should Disregard Defendants' Exhibits.**

Defendants try to tip the scales by attaching fifteen (15) exhibits through the backdoor. This Court should neither consider them nor give them any weight. A "pleading is deemed to include any "written instrument" that is attached to it as 'an exhibit.'" <u>Lynch v. City of New York et al.,</u> 952 F.2d 67, 79 [2d Cir. 2018], *see also*. (Fed R Civ P 10[c]). "Or is incorporated by reference" *id. citing* <u>Cortec Industries Inc. V. Sum Holding LP.,</u> 949 F.2d 42 42, 47 [2d Cir. 1991]. Finally, if a document is not incorporated by reference, or attached as an exhibit then the court can still consider additional documents if the "plaintiff solely relies [on] [it] and [it] is integral to the complaint." <u>Lynch</u> *id.* A written instrument refers to a legal document defining the "rights duties entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate" <u>Smith v. Hogan</u>, 794 F.3d 249, 254 [2d Cir. 2015].

Here, Defendants attach fifteen (15) exhibits (Def Memo ¶6 fn.3). Exhibits 1-5 are the recycled affirmations of Justin Barry. Defendants provide no legal basis for this Court to consider the exhibits. In addition, Plaintiffs neither attached any exhibits to the complaint, nor incorporated any by reference. Thus, this Court should not consider exhibits 1-5. *See also* <u>Anderson v. Bessemer City,</u> 470 U.S. 564 [1985] (finding that a court cannot consider the weight of evidence in a motion to dismiss pursuant to Rule 12[b][6]).

Defendants quizzically attach nine (9) exhibits (ex 6-15) purporting to be the named Plaintiffs' requests for accommodations. (Def Memo ¶ 6). No Plaintiff here has claimed that their individual requests were improperly denied. Thus, exhibits 6-15 are improper because they are not integral to the complaint since no claim depends on them *See* <u>Lynch</u>¨ *id.* at 79 [2 Cir. 2018] (holding that written evidence was properly excluded from being part of the complaint where the evidence was

not integral to a claim since the claim did not depend on the contents of the writing). This Court should similarly deny exhibits 6-15 from being part of the complaint.

II.       DEFENDANTS FAIL TO EXTINGUISH THE GUARANTEE CLAUSE CLAIM
**Legal Framework**

The legal framework governing a Fed. R. Civ. P. 12(b)(6) militates in Plaintiffs favor. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that relief is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 [2007]. A claim is considered to be plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 [2009]. The court must be able to infer more than a mere possibility of misconduct for the pleader to be entitled to relief. Lynch v. City of New York et al., 952 F.3d 74 [2d Cir. 2018].

This Court must accept all well pleaded factual allegations in the complaint as true. Twombly, *id.* "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal *Id.* at 679. Furthermore, this Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Arar v. Ashcroft, 585 F.3d 559, 567 [2d Cir. 2009]. Moreover,  "Rule 12(b)(6) does not countenance . . .dismissals based on a judge's disbelief of a complaint's factual allegations". Lynch v. City of New York et al., *id.* at 75.  Finally, when assessing the complaint's plausibility at the pleading stage, there is no imposition of a probability requirement; "it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence . . ." Lynch *id. at 75.*

**This Court Had Subject Matter Jurisdiction Over the First Cause of Action Invoking the Guarantee Clause**

The Guarantee Clause is justiciable, and the defendants have failed to show that this Court lacks subject matter jurisdiction pursuant to Fed. R. civ. P. 12(b)(1). In contrast to Defendants argument (Def. Memo ¶ 9), this case does not involve a political question that would divest this Court of subject matter jurisdiction. A matter involves a political question "where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." Zivotofsky ex rel. Zivotofsky v. Clinton, 566 US. 189, 195 [2012] (citations omitted); *see also* Baker v. Carr 369 U.S. 186 [1962]. Further, it is within this Court's immediate province to say what the law is, and what it is not. Marbury v. Madison, 1 Cranch 137, 177 [1803].

Defendants fail under both prongs.   In this case, there is no "textually demonstrable constitutional commitment" to either the Executive or Legislative Branch to decide whether the Constitution or law permits the Chief Judge of the New York State Court of Appeals to mandate employees be vaccinated as a new condition of employment. *Cf*. Zivotofsky, 566 U.S. at 197 (stating that '[t]he Judicial Branch appropriately exercises that authority . . . where the question is whether Congress or the Executive is "aggrandizing its power at the expense of another branch." ') *quoting*  Freytag v. Commissioner, 501 U.S. 868, 878 [1991]; *see e.g*.  Myers v. United States, 272 U.S. 52, 176, [1926] (holding a statute unconstitutional where it trespassed upon the President's removal power). Similarly, this Court is being asked to determine whether the Judicial Branch has encroached upon the power of the Legislative Branch. Thus, the first cause of action presents a justiciable issue that does not involve a political question.

Alternatively, there are very clear standards for this Court to resolve it. The New York State and United States Constitutions, the "major questions doctrine", and statutory interpretation all

provide a clear, manageable standard. <u>W. Virginia v. Envtl. Protec. Agency</u>, 142 S.Ct. 2587 [June 30, 2022]; *see e.g.* <u>Morrison v. Olson,</u> 487 U.S. 654, 685 [1988] (deciding that a statute was constitutional insofar as it did not unlawfully impinge on the President's "exercise of his constitutionally appointed functions"). Indeed, Defendants thoroughly argue that the UCS was well within its authority (Def Memo ¶¶ 9-10). While Plaintiffs aver that the OCA lacks the police power under the Tenth Amendment to issue the mandate (Compl. p 23 ¶¶5-6) and that the OCA lacks Constitutional and Statutory authority to issue the Mandate (*id.* ¶7). Classic statutory interpretation under the Judiciary Law for example, provides a clear roadmap.  Thus, there is a judicially manageable standard to guide this Court, and the defendants cannot claim otherwise.

Hence, the availability of judicially manageable standards to resolve the issue nullifies Defendants attack at this stage in the litigation. Accordingly, this court should deny Defendants' request to dismiss the first cause of action under Fed. R.  Civ. P. 12(b)(1). See also  Largess v. Supreme Judicial Court for State of Massachusetts, 373 F.3d 219, 229 [1st   Cir. 2004](acknowledging that federal courts could provide a forum to enforce the Guarantee Clause); <u>Bush v. Gore,</u> 531 U.S. 98 [2000]; <u>New York v. U.S.,</u> 505 U.S. 144,183-185 [1992]; <u>Reynolds v. Sims,</u> 377 U.S. 533, 582 [1964] (finding some claims under the Guarantee Clause to be justiciable); <u>Attorney General of Michigan ex rel. Kies v. Lowrey,</u> 199 U.S. 233 [1905]; <u>Forsyth v. Hammond,</u> 166 U.S. 506 [1897]; <u>In re Duncan,</u> 139 U.S. 449 [1891]; <u>Plessy v. Ferguson,</u> 163 U.S. 537, 563-564, [1896] (Harlan, J., dissenting). Thus, Defendants argument that this Court lacks subject matter jurisdiction over the Guarantee Clause is erroneous. Accordingly, this Court should reject it.

III.     DEFENDANTS DO NOT PROVE THAT PLAINTIFFS FAILED TO STATE A
         CAUSE OF ACTION FOR THEIR EQUAL PROTECTION CLAIMS[10]

**Defendants Challenge the Equal Protection Claims Using Unpled Facts.**

Defendants miss the mark entirely. These arguments must be denied because they are premised
on facts that are not in the complaint and are disputed by Plaintiffs. Defendants for instance,
incredulously inject their own facts and argue that "the distinction [the Policy] draw[s] between
vaccinated and non-vaccinated persons has an amply rational basis." ( Def. Memo p 21).  None of
the averments Defendants rely on  are in the complaint.  And Defendants skip the first count under
the Eighth Cause of Action altogether.  Again, Defendants rely on the weight of competing "facts"
as opposed to the legal sufficiency of the pleadings. This alone, is fatal to the defendant's motion.
In re Thelen LLP, 736 F.3d 213, 218 [2d Cir. 2013].

**Defendants Fail Because They Lack a Compelling Governmental Interest.**

Defendants do not have a compelling governmental interest in stemming the spread of any
communicable disease. The cases cited in support concern the Executive Branch—which does
have a compelling interest. Defendants cannot point to any reasoned authority for such
extraordinary power. Mandating vaccination as a condition of employment is clearly well beyond
the OCA's administrative realm. The cases Defendants cite are therefore inapplicable. *See e.g.*
Abadi v. City of New York, 2022 WL 347632, at *9 [S.D.N.Y. 2022] (Def Memo. P 21);  Andre-
Rodney v. Hochul, 569 F.Supp 3d 128 [N.D.N.Y. 2021] (Def. Memo. P 20); Maniscalco v. N.Y.C.
Dep't of Educ., 563 F. Supp. 3d 33, [E.D.N.Y. 2021] (Def. Memo p 20). Just as Defendants in
their judicial capacity could not pass judgment on the wisdom of emergency measures
implemented by the Executive Branch, it cannot—in its administrative capacity take on the

---

[10] Ultimately, Plaintiffs challenges to the efficacy of the vaccine renders Defendants' arguments academic. (Comp.
¶¶ 187-195)

responsibilities of Executive agencies like the Department of Health. <u>Bimber's Delwood, Inc v.</u> <u>James,</u> 496 F. Supp.3d 760 [N.D.N.Y. 2020].

Defendants have no compelling interest in public health emergencies (Compl. ¶135). Indeed, a compelling governmental interest cannot exist without the requisite police powers authorizing governmental action from the outset. *Cf.* <u>Rivers v. Katz,</u> 67 N.Y.2d 485, 495 [1986] (holding that "[t]he right to reject treatment must, however, yield to compelling state interests, including the exercise of the **state's** police power where the person 'presents a danger to himself or other members of society'"); *accord* <u>Mendez v. Dinkins,</u> 226 A.D.2d 219, 223 [1st Dept 1996]. Defendants readily admit that it is not the State (Def Memo. p 10.) Thus, it has no compelling governmental interest. Accordingly, this Court should reject its arguments challenging the Due Process and Equal Protection causes of action since Defendants cannot implement any measure, to further an interest of the political branches of government.

### Alternatively Plaintiffs Equal Protection Causes of Action are Plausible.

Alternatively, Plaintiffs plead two plausible claims under selective enforcement theories (Comp. pp 35-36, ¶¶111-128 & pp 21-22 ¶¶ 196-203).  Plaintiffs assert that employees who received an initial dose of the shot were considered vaccinated for only a year (Compl. ¶¶ 102, 103). After a year, the OCA determined these employees were unvaccinated (*id.* p36, ¶115). Plaintiffs further assert that any protection offered by vaccination wanes over the course of several months (*id.* ¶¶ 190-191).  Thus, unvaccinated Plaintiffs are similarly situated to unvaccinated employees.

The OCA terminated a myriad of Plaintiffs for being unvaccinated but did not terminate other unvaccinated employees (*id.* p36, ¶115). Unvaccinated employees did not have to test or

quarantine as unvaccinated Plaintiffs who still worked because they received an accommodation (*id.* ¶¶ 117-120).

Ultimately, Defendants treated unvaccinated Plaintiffs, who did not receive the initial series of the vaccine adversely (*see e.g.* Compl. ¶¶ 111-121). While Defendants took no adverse actions against unvaccinated employees who received an initial dose *id.* There is no rational basis for treating one group of unvaccinated employees differently than another group of unvaccinated employees. *See* <u>Romer v. Evans,</u> 517 U.S. 620, [1996]; <u>Winston v. City of Syracuse</u>, 887 F.3d 553, 560 [2d Cir. 2018] (acknowledging that the classification must have a "rational relation to some legitimate end"); <u>Heller v. doe,</u> 509 U.S. 312, 320 [1993] (stating that there must be a "rational relationship between the disparity of treatment and some legitimate government purpose"). *Cf.* <u>Hu v. City of New York,</u> 927 F.3d 81 [2d Cir. 2019] (finding selective enforcement under the Equal Protection clause where Asian workers were ticketed for standing water on the jobsite, but the inspector did not ticket white workers who were also working next to a standing pool of water). Here, the possibility of any rational reason is null. Defendants acknowledge the Mandate was to stem the spread of COVID-19. Thus, unvaccinated employees present the same risk—under Defendants line of reasoning—as unvaccinated Plaintiffs. Accordingly, no explanation in the world will suffice to explain away the disparate treatment.

**Second Theory of Selective Enforcement**

Alternatively, and in addition to, Plaintiffs allege that Defendants violated the Equal Protection clause by selective enforcement against Plaintiffs versus all other human beings entering the courthouse. To show that Plaintiffs are similarly situated with other human beings, Plaintiffs must provide facts in which this Court can plausibly infer that there is a "reasonably close resemblance" between Plaintiffs and other human beings. <u>Hu,</u> *id.* 927 F.3d 81, 97 [2d Cir. 2019]. Moreover, the

degree to which individuals are similarly situated depends heavily on the "facts and consequences of the case." Jennings v. City of Stillwater, 383 F.3d 1199, 1214 [10th Cir. 2004].

In this case, Plaintiffs again exceed the minimum plausibility standard. Plaintiffs aver that the virus infects human beings indiscriminately (Compl. ¶177). It does not infect humans based on their job title (*id.* at ¶176), it does not stop at the court's threshold (*id.* ¶ 178), it does not care about constitutional rights or societal issues like access to justice (*id.* ¶ 175). Hence, one human being can infect everyone in a courthouse irrespective of whether that person is a litigant, lawyer, or OCA employee (*id.* ¶¶ 182, 183). As such, Plaintiffs are uniquely in a class with every other member of the human species. Accordingly, these facts establish a plausible claim under the Fourteenth Amendment that Defendants lack a rational basis. *See* Immaculate Heart Central School v. The New York State High School Athletic Association, 797 F.Supp.2d 204 [N.D.N.Y. 2011] (holding that the plaintiffs stated a cause of action under the Equal Protection clause where the defendants lacked any rational basis to treat private school students differently than public school students in the same geographic location).

IV.   PLAINTIFFS SEPARATION OF POWERS CLAIM IS PLAUSIBLE.

Defendants miss the mark so badly their argument falls flat on its face and this Court should deny it. Plaintiffs sustained a plausible cause of action here. The OCA—like any other administrative agency—may promulgate rules and procedures as delegated by the Legislature. *see e.g.,* Matter of New York State Criminal Defense Lawyers v. Kaye, 96 N.Y.2d 512, 517 [2001]. Defendants cite no authority to support that the OCA is somehow exempt. Just the opposite, Defendants openly acknowledge that the OCA is an administrative agency subject to the same standards as any other agency. *See e.g.* Ventresca-Cohen v. DiFiore, 77 Misc. 3d 652 [Sup Ct. Albany County, 2022] (challenging OCA determinations in an administrative capacity pursuant to CPLR Article 78). An administrative agency violates N.Y. Const art III § I, when it trespasses into

the legislative function of lawmaking, not rulemaking *Cf.* <u>Demetriou v. New York State Dept. of</u> <u>Health</u>, 162 N.Y.S.3d 673 [ Sup. Ct.  Nassau County, 2022] (holding that the State violated separation of powers by promulgating a regulation allowing the Commissioner of Health to make unbridled masking determinations where the Legislature did not enact enabling legislation authorizing the Department of Health to promulgate the regulation, and the agency promulgated it from a clean slate.)

Here, Plaintiffs stated that when it comes to matters of general public health policy, Plaintiffs elected legislators—not the judicial branch—are tasked with enacting laws to further the public welfare (Compl. ¶¶ 24-29). *See* <u>Our Wicked Lady LLC v. Cuomo,</u> 2021 WL 915033, *4 [S.D.N.Y. 2021] (stating that Covid era restrictions on businesses were matters to be taken up by the "duly elected representatives of citizens," not the litigants or the court). Plaintiffs were not subject to mandatory vaccination by either the Legislature or Executive (Compl. ¶24). Defendants exceeded the scope of their Constitutional authority (*id.* at ¶26) and the powers delegated to the OCA by the Legislature. *See* NY Judiciary Law. Thus, Defendants usurped the role of Plaintiffs elected representatives by requiring Plaintiffs to be vaccinated against a disease omnipresent everywhere.

Defendants' argument falls apart because the power it does have over employees is not absolute. It is axiomatic that the OCA cannot compel its employees to do engage in whatever conduct it deems appropriate. There are limits. "Public employers may not condition employment on the relinquishment of constitutional rights." <u>Lane v. Franks</u>, 573 U.S. 228, 236 (2014). *see also* <u>Keyishian *v.* Board of Regents of Univ. of State of N. Y.</u>, 385 U.S. 589, [1967]; <u>Pickering v. Board</u> <u>of Education</u>, 391 U.S., 583 [1968]; <u>Connick v. Myers</u>, 461 U.S. 138, (1983).

Additionally,  Defendants' argument dissipates entirely under Supreme court precedent. The United States Supreme recently stayed the Occupational Safety and Health Administration

(OSHA) mandate requiring that roughly 84 million workers receive the COVID-19 vaccine. <u>NFIB v. OSHA</u> 595 U.S. ___ [2022] (per curium).  The Court clearly articulated that COVID-19 is not an occupational hazard specific to the workplace (*id.* at 6). It is a universal risk that occurs wherever people gather in public (*id.* at 7)*.* Notably, the Court stated that "a vaccine mandate is strikingly unlike" typical workplace regulations *id.* After all, the Court said "[vaccination] cannot be undone at the end of the workday." *Id.* (Compl. ¶¶19-29). Similarly, COVID-19 is not unique to UCS courthouses. As such, the defendants overstep by regulating conduct to prevent a risk that exists in all public places. Accordingly, Plaintiffs have not only shown the plausibility of this claim but have proven Defendants Mandate to be per se unconstitutional.

## V.  PLAINTIFFS HAVE ASSOCIATIONAL STANDING [11]

The NYS Court Employees Against Mandates is a not-for-profit organization incorporated in the State of New York (Organization) (Exhibit 2). An organization has standing to bring suit on behalf of its members where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Faculty v. New York University,</u> 11 F.4th 68, 74 [2d Cir. 2021]. The corollary standard is the familiar elements of standing under Article III. Thus, Plaintiffs must show that one or more of its members has "(1) suffered an injury in fact . . . (2) there must be a causal connection between the injury and conduct complained of; [and] (3) it must be likely . . . that the injury will be redressed by a favorable decision. <u>Faculty,</u> 11 F.4th at 74.

Moreover, "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the] [courts] presum[e] that general

---

[11] * Plaintiffs associational standing should be considered as part of the pleading since it is integral to the action and Plaintiffs rely solely on documents attached hereto. <u>Lynch v. City of New York et al.,</u> 952 F.3d 67, [2d Cir. 2018],

allegations embrace those specific facts that are necessary to support the claim." Bldg. and Const. Trades Council of Buffalo, New York and Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 145 [2d Cir. 2006] (internal citation and quotes omitted).

In this case, the interests the organization seeks to protect are germane to the lawsuit (Affidavit A. Pannenbacker). Indeed, the main purpose of the Organization is to "provide court employees from across the State the ability to challenge the vaccine mandate . . .and advocate against unfair, unlawful, unconstitutional, coercive, workplace requirements, like the vaccine mandate" (*id.* at ¶ 9). Plaintiff members have all been injured as a direct result of the Mandate (*id.* ¶¶ 11-14). Plaintiffs have shown an injury in fact of one of its members (Affidavit N. Puma). Ms. Puma's termination itself is an injury in fact. Although, the hardships she experienced as a result make the injury prong incontestable (*id.*). Moreover, other members of the organization experienced similar economic and social injuries (*id.*).  Individual members do not need to participate in the lawsuit because the Defendants misconduct applies equally to all of them, and the relief sought flows from Defendants' misconduct. Finally, a favorable outcome will certainly redress their injuries. *See* N.A.A.C.P. v. Acusport Corp., 210 F.R.D. 446, 457 [E.D.N.Y. 2002].

## VI.    DEFENDANTS MISCONSTRUE PLAINTIFFS SUBSTANTIVE DUE PROCESS CLAIM AND IT IS PLAUSIBLE.

Plaintiffs substantive due process claim under the Third Cause of Action presents a matter of first impression. Defendants myopically focus on the property interest related to employment is not a fundamental right. Walker v. City of Waterbury, 361 F.Appx 163, 165 [2d Cir. 2010]. This is true. But it is not Plaintiffs argument (Comp. ¶¶ 30-47). "The Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them." Bryant v. New York state educ. Dep't, 692 F.3d 202, 217 [2d Cir. 2012]. It protects against "government

action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised" Cunney v. Bd. Of Trustees of Village of Grand View, N.Y., 660 F.3d 612, 626 [2d Cir. 2011]. The first step is to determine whether a government rule or regulation infringes upon a fundamental right. Bryant, 692 F.3d at 217.

Here, Plaintiffs aver that they—and all Americans—have a fundamental right to control their cellular biology as it constitutes life itself (Comp. ¶ 36). The process through which the mRNA vaccines work requires the direct manipulation of the cells responsible for creating life. Plaintiffs thoroughly describe this process (Comp. ¶¶ 49-62). A sampling of some of the Supreme Court cases in which the Court determined fundamental rights is illustrative. *See* Moore v. East Cleveland, 431 U.S. 494 [1977] (deciding that the traditional role of the family encompasses a fundamental right); Washington v. Glucksberg, 521 U.S. 702 [1997] (finding assisted suicide not a fundamental right); Cruzan v. Director, Missouri Department of Health, 497 U.S. 261 [1990] (holding that refusing lifesaving treatment is a fundamental right).

Arguing by analogy, if refusing lifesaving treatment is a fundamental right, then Plaintiffs must have a fundamental right in the cellular components responsible for creating human beings and their unique attributes. What could be more fundamental than life itself? It follows then that strict scrutiny applies. Dandamudi v. Tisch, 686 F.3d 66, 72 [2d Cir. 2012]. For pleading purposes, Plaintiffs substantive due process cause of action passes muster.

This is just a red herring though. The UCS has absolutely no "interest in safeguarding the public against disease." (Def. memo ¶ 15). Defendants cite no authority for its newly discovered role as a public health agency. Absent any interest, this court cannot even conduct the proper analysis. Defendants simply have no grounds to assert an interest. If it were applicable, Defendants would not have standing.

20

Alternatively, the Mandate is "arbitrary, conscious shocking, or oppressive . . ." Bimber's Delwood, Inc v. James, 496 F. Supp.3d 760 [N.D.N.Y. 2020]. Viewed in its totality, the complaint meets all three. DiFiore forced an entire workforce to take a shot that utilized new technology. Those who did not, risked losing their careers, not jobs. DiFiore delivered this rule through email. It was never codified. For the first time in history, the Chief Judge issued a pure edict. To make things worse, the vaccine was not a vaccine at all. It was a shot. The virus mutated too quickly to be an actual vaccine preventable disease. The vaccine did not stop the transmission of the virus. Moreover, this shot could cause negative side effects. And only employees were required to be vaccinated. It did not apply to anyone else because of the OCA's alleged mission statement, which has nothing to do with public health. This is the epitome of arbitrary. It makes no sense.

It shocks the conscience because it is so repugnant to the judiciary's function. The defendants put Plaintiffs on the "chopping block" for opposing the Mandate. Hard working people saw years of work disappear before their eyes. This plausibly shocks the conscience.

VII.   **PLAINTIFFS CLAIM UNDER THE DEPRIVATION CLAUSE OF §1985(3) IS PLAUSIBLE.**

"To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Britt v. Garcia, 457 F.3d 264, 270 n.4 [2d Cir. 2006] (internal quotations omitted). In addition, Plaintiffs must plead facts showing that they belong to a protected class. Colombrito v. Kelly, 764 F.2d 122 [2d Cir. 1985]. Finally, to state a claim under the Deprivation Clause, Plaintiffs must allege that "the defendants

who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws." Zhang Jingrong v. Chinese Anti-Cult World All., 287 F. Supp. 3d 290, 297 [E.D.N.Y. 2018] *quoting* Spencer v. Casavilla, 903 F.2d 171, 174 [2d Cir. 1990].

The Second Circuit has explained that a "plaintiff seeking to make out a conspiracy claim must have "some factual basis supporting a meeting of the minds." Webb v. Goord, 340 F.3d 105, 110-11 [2d Cir. 2003]. "The factual basis need not be direct evidence—a plaintiff may also meet this burden by alleging facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights." Green v. McLaughlin, 480 Fed.Appx. 44, 46 [2d Cir. 2012]. "A plaintiff must also show 'with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Simpson v. Uniondale Union Free Sch. Dist., 702 F.Supp.2d 122, 133 [E.D.N.Y. 2010]. *see also* LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) ("A conspiracy ... need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.").

Contrary to Defendants assertions, Plaintiffs establish a plausible claim. Plaintiffs plead the agreement between Defendants to arbitrarily grant a set number of applications (Comp. ¶ ¶ 50-52). Defendants had class-based animus against Plaintiffs based on their religion. Plaintiffs further allege that Defendants created the supplemental form in deprivation of their First Amendment right to free exercise. Moreover, there is an inference that the supplemental form was created with animus of applicants who demonstrated pro life views and others who were led by their personal relationship with God. Thus, creating the forms was the overt act. Requiring applicants to complete them were acts in furtherance of the conspiracy.

Notably, "[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds" Hernandez v Commissioner, 490 US 680, 699 [1989];*accord* Kane v de Blasio, 19 F4th [*6]at 168; *see also* Frazee v Illinois Department of Employment Security, 489 US 829, 833 [1989] ["disagreement among sect members" over whether work was prohibited on the Sabbath had not prevented the Court from finding a free exercise violation based on the claimant's "unquestionably . . . sincere belief that his religion prevented" him from working]).[FN4]" Plaintiffs establish a plausible claim under §1985(3).

Defendants claim that Plaintiffs fail here because alleged conspirators who are "acting within the scope of [their] employment, are legally incapable of conspiring with each other." (Def memo ¶ 23). This is known as the "intercorporate conspiracy doctrine." This claim is unavailing because the  intercorporate conspiracy doctrine is not applicable where "the individuals within a single entity are pursuing personal interests wholly separate and apart from the entity." Guichard v. Town of Brookhaen, 26 F. Supp.3d 219, 228 [E.D.N.Y. 2014]. Here, it is inferable that Defendant Barry, Defendant Marks, and Defendant Difiore had personal animus with pro life beliefs. Such personal beliefs are surely not held by the UCS.

VIII.   <u>STATE DUE PROCESS</u>

The allegation that the Mandate was arbitrary is plausible; the facts alleged by Plaintiffs here sufficiently make out a prima facie case see e.g. (Comp. ¶ 93-110). McMinn v. Town of Oyster Bay, 66 N.Y.2d 544 [1995]

IX.   <u>DEFENDANTS HAVE NOT SHOWN QUALIFIED IMMUNITY</u>

"When a defendant raises the defense of qualified immunity on a motion to dismiss rather than a motion for summary judgment, the defendant must accept the more stringent standard applicable to this procedural route" McKenna v. Wright, 386 F.3d 432, 436 [2d Cir.2004]. Moreover, the

"plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *Id.*; *accord* Benzman v. Whitman, 523 F.3d 119, 125 [2d Cir.2008]; Anderson v. Recore, 317 F.3d 194, 197 [2d Cir.2003].

In determining the issue of qualified immunity, "courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." Taravella v. Town of Wolcott, 599 F.3d 129, 133 [2d Cir.2010]. It is clearly established that forcing Plaintiffs to take a vaccination that did not work and was potentially harmful to their health a condition of employment, while excluding every other similarly situated person violated clearly established, just as conspiring to deprive Plaintiffs of their First Amendment right to freedom of expression. Exercising power unlawfully is in violation of clearly established law. Denying Plaintiffs a fair, constitutional accommodation process is against clearly established federal law. And the list goes on.

X.   PLAINTIFFS SECTION 1983 CLAIMS ARE AGAINST THE PROPER PARTIES

Plaintiffs bring the Third Cause of Action against DiFiore and Marks. The Fourth Cause of Action is against Justin and Nancy Barry. The seventh cause of action is against DiFiore and Marks. As is the Eighth cause of Action. Further, Plaintiffs seek prospective relief against UCS and OCA.

XI.   CONCLUSION[12]

For the plethora of reason provided, this court should deny the defendants motion to dismiss. The Defendants evade the facts plead. This is fatal from the outset. Then, Defendants are unable to prove Plaintiffs failed to state a cause of action. DiFiore's "monarch" styled rule violated the

---

[12] Plaintiffs abandon the Fifth Cause of Action for breach of contract and the sixth cause of action regarding Procedural due Process as it is moot. Plaintiffs concede that Carolyn Grimaldi is not a properly named Defendant.

Guarantee Clause, the OCA's email edict violated the Separation of Powers Doctrine because it usurped the role reserved for the political branches of government. Defendants violated the Equal Protection clause by treating similarly situated people disparately with no rational basis. The defendants extinguished human beings' careers who did not want to take a shot that did nothing to stop the spread of the virus and had potential side effects. This can be nothing other than coercive, oppressive, and arbitrary. More importantly, Defendants have not shown the complaint to fail to state a cause of action. Further, It cannot defeat the complaint unless it accepts that the plaintiffs aver that the vaccine is a shot that does not stop the transmission of the virus and that it has potentially negative side effects, as well as the other averments challenging Defendants scientific claims.  Defendants cannot admit this without undercutting the belly of every one of its arguments. Thus, its motion fails. Defendants cannot defeat material facts in a Fed. R. Civ. P. 12(b)(6) motion with hollow legal expositions. For all the reasons above this court should deny Defendants motion.

Dated: March  17, 2023
            Uniondale, NY 11556

Respectfully Submitted,

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
BY: CHAD J. LAVEGLIA ESQ.,
*Attorneys for Plaintiffs*
626 RxR Plaza, Suite 613
Uniondale, New York 11566
(631) 450-2468
claveglia@cjllaw.org