UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
KIM COUGHLIN, ANNE
GALLAGHER, DONNA NOYCE,
TAYLER THOMPSON, and NYS
COURT EMPLOYEES AGAINST
MANDATES LTD.,

                  Plaintiffs,                  **MEMORANDUM AND ORDER**

-against-                      Case No. 2:22-CV-04002 (FB) (JMW)

NEW YORK STATE UNIFIED COURT
SYSTEM, NEW YORK STATE
OFFICE OF COURT
ADMINISTRATION, CHIEF JUDGE
JANET DIFIORE, CHIEF
ADMINISTRATIVE JUDGE
LAWRENCE K. MARKS, JUSTIN A.
BARRY, NANCY BARRY, and
CAROLYN GRIMALDI,

Defendants.
-----------------------------------------------x

*Appearances*:
*For Plaintiffs*:
CHAD J. LAVEGLIA
Law Office of Chad J. LaVeglia PLLC
262 RxR Plaza, Suite 613
Uniondale, NY 11556

*For Defendants*:
BRUCE BIRENBOIM
LIZA M. VELAZQUEZ
GREGORY F. LAUFER
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

1

LINA DAGNEW
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
2001 K Street, NW
Washington, D.C. 20006

**BLOCK, Senior District Judge**:

This case is the latest challenge to New York State Unified Court System's ("UCS") Vaccine Mandate, issued in response to the COVID-19 pandemic. [1] Defendants UCS, New York State Office of Court Administration ("OCA"), Chief Judge Janet DiFiore, Chief Administrative Judge Lawrence K. Marks, Chief Administrator for the OCA Justin Barry, Chief of Operations for the OCA Nancy

---

[1] In adjudicating Defendants' motion, the Court is cognizant of the multiple other challenges that have been previously litigated before other courts.  With small exception, those challenges have so far been unsuccessful.  *Ferrelli v. New York Unified Ct. Sys.*, No. 122CV0068LEKCFH, 2022 WL 673863, at *9 (N.D.N.Y. Mar. 7, 2022) (declining to preliminarily enjoin the Vaccine Mandate for violating the Free Exercise Clause of the First Amendment); *Brignall v. New York Unified Ct. Sys.*, No. E2022-0241CV, 2022 WL 17543641, at *14 (N.Y. Sup. Ct. Apr. 13, 2022) (declining to enjoin the Vaccine Mandate for being arbitrary and capricious, enacted in excess of jurisdiction, or in violation of the Free Exercise Clause, and granting motion to dismiss under N.Y. C.P.L.R. 3211 (a)(7)); *Ferrelli v. State of New York*, No. 031506/2022, NYSCEF Doc. No. 74 at 22 (granting motion to dismiss under N.Y. C.P.L.R. 3211 (a)(7) and 7804(f)); *Civ. Serv. Emps. Ass'n, Inc., Loc. 1000, AFSCME, AFL-CIO v. New York Unified Ct. Sys.*, 157 N.Y.S.3d 675, 695 (N.Y. Sup. Ct. 2021) (declining to enjoin Vaccine Mandate upon challenge from labor unions); *Mora v. New York Unified Ct. Sys.*, No. 22 CV 10322 (VB), 2023 WL 6126486, at *15 (S.D.N.Y. Sept. 19, 2023) (dismissing Title VII, § 1983 Free Exercise claim, First Amendment retaliation claim, and Equal Protection claim brought by NY judge who was denied religious exemption and declining to issue injunctive relief).  *But see Ventresca-Cohen v. DiFiore*, 177 N.Y.S.3d 853, 862-65 (N.Y. Sup. Ct. 2022) (partially granting petition for review in Article 78 proceeding on the basis that UCS may have irrationally denied petitioners' religious exemptions).

Barry, and Director of Human Resources for the OCA Carolyn Grimaldi (collectively "Defendants"), move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]  For the following reasons, Defendants' motion is granted.

## I.    BACKGROUND

The following facts are taken from the Complaint.  For the purposes of this motion, the Court accepts them as true and draws all reasonable inferences in favor of Plaintiffs with respect to Defendants' 12(b)(6) motion.  *See, e.g.*, *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995).

Plaintiffs are 96 New York court staff who were terminated, have retired with decreased benefits, are employed pursuant to involuntary vaccinations, are on approved leave with denied religious exemptions, or who received a religious exemption but still object pursuant to the claims raised in the instant case.  The four named Plaintiffs are former OCA employees who worked as court officers and court assistants.  The remaining Plaintiffs are represented by the non-profit NYS Court Employees Against Mandated, Ltd ("NYSCEAM"), which retained counsel to commence litigation on their behalf.  Plaintiffs' employer was OCA, the

---

[2] In their opposition papers, Defendants concede that Carolyn Grimaldi was not a properly named defendant and abandon their claims against her.  Accordingly, all claims against Grimaldi are dismissed.

administrative arm of UCS.  UCS in turn is the judicial branch of New York State pursuant to Article VI of the New York Constitution.

Around March 2020, the COVID-19 Pandemic began, prompting New York to declare a state of emergency.  For a time, New York courts, like many public institutions across the country, were forced to halt most in-person operations and operate virtually.  During this difficult time, New York courts were kept afloat by the dedication and hard work of their staff.

Around May 2021, New York State court staff returned to work in person. On or about August 9, 2021, Chief Judge DiFiore announced that, beginning on September 7, 2021, unvaccinated court staff were going to be required to undergo weekly COVID-19 testing and daily COVID-19 assessments.  The testing requirements were mandatory, irrespective of whether the court staff appeared sick, reported flu-like symptoms, or had a fever.  As court staff, Plaintiffs complied with the testing requirements.

In response to the pandemic, several pharmaceutical companies developed vaccines to combat the virus.  Around late 2021, three COVID-19 vaccinations became available to the general public in New York—made by PfizerBioNTech ("Pfizer"), Moderna, and Johnson & Johnson.  According to the Complaint, the Pfizer and Moderna vaccines built an immune response through messenger RNA

("mRNA").  mRNA is a genetic material made from a DNA template.  An mRNA carries information from the DNA in a cell's nucleus to a protein building ribosome.  There, the ribosome reads the mRNA sequence and builds amino acids into proteins in order to combat the virus: "In regular terms, ribosomes build the stuff we are made of."  Compl. ¶ 55.

On or about August 25, 2021, Chief Judge DiFiore and Chief Administrative Judge Marks announced a mandatory vaccine requirement via email (the "Vaccine Mandate").  Beginning September 27, 2021, all judicial and non-judicial personnel across New York were required to be vaccinated to attend work in person.  Any employee of New York's judiciary who was not vaccinated by September 27, 2021, and who had not received a medical or religious exemption, would be prohibited from reporting to work.  Those employees would also face disciplinary action including lost wages, lost benefits, suspension, or termination.  Under the policy, vaccinated employees had to obtain a booster shot a year after they were vaccinated or they would lose their vaccinated status.  But, even without a booster shot, unvaccinated employees who had previously received a vaccination would not be subject to termination.  Members of the public, including lawyers, jurors, and litigants, could enter courthouses without being vaccinated.

Court employees could apply for medical or religious exemptions from the mandatory vaccination requirement. Exemption applications were reviewed by a Vaccination Exemption Review Committee (the "Committee"), which was created for this specific purpose. The Committee was supervised by two in-house UCS attorneys. Employees who were granted religious exemptions had to reapply around September 2022, and then subsequently on an annual basis.

Most Plaintiffs applied for religious exemptions. The vast majority were denied. Defendants did not provide Plaintiffs with any explanation for the denial. According to Plaintiffs, this was part of a conspiracy—Defendants created the exemption process with the intent of granting a finite percentage of exemption requests, regardless of their validity. Plaintiffs allege that the Committee's criteria for evaluating exemption requests were arbitrary, non-uniform, and non-standardized, and that Defendants evaluated requests for exemptions without knowing the applicant's identity. According to Plaintiffs, this anonymity meant that the Committee could not determine the applicants' veracity. Regarding religious exemptions, Plaintiffs allege that the evaluation process was based on whether or not an articulated religious belief specifically prohibited the use of the COVID-19 vaccines.

According to the Complaint, after receiving numerous, valid applications, Defendants added a supplemental form to the religious exemption application.[3] Plaintiffs allege that the supplemental form was intended to minimize requests for exemptions based on the belief in fetal cells being used in vaccines, the body's connection to God, and beliefs that did not fit squarely within a religious dogma.

The Supplemental form is divided into two sections. The first section begins by explaining the fetal cell lines that were used in the development of the COVID-19 vaccines. The form explains that the fetal cell lines were used to develop or manufacture the vaccines but were not used in the vaccines themselves. The section then provides a table with a list of drugs that relied on the same fetal cell line in their development. Applicants are asked whether they used any of the listed products, and how their religious beliefs permit them to take those medications but not COVID-19 vaccines. Applicants are then told about other vaccines that also utilize fetal cell lines in production or testing. The form then asks the applicant which vaccines they have received, and, if they indicated that they have received a fetal-

---

[3] Although the terms of the supplemental form are not listed in the Complaint, the Court incorporates them by reference given the Complaint's heavy reliance upon them and because doing so does not prejudice Plaintiffs. *See Spencer Trask Software Info. Serv. v. Rpost Intl.*, 383 F. Supp. 2d 428, 438 (S.D.N.Y. 2003) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

cell-developed vaccine, how their religious beliefs permit them to take these vaccines but prohibit them from taking a COVID-19 vaccine.

The second section of the supplemental form states:

> You have provided information in a previous statement indicating that your religious faith calls for you to abstain from medicines and vaccines due to concerns regarding the sanctity of your body or its purity.  Please answer the questions below to allow us to gain a better understanding of your beliefs.

The applicants are then asked to: (1) list all the medicines, medical treatments and procedures, vaccines, and/or foods that they abstain from due to their religious beliefs; (2) list the date they began to abstain from the specified medicines and vaccines and/or other medical treatments; (3) provide a detailed explanation as to why their religious faith requires them to abstain from the listed substances in question 1; (4) state whether they have received an influenza, pneumonia, tetanus, shingles, HPV or any other type of vaccine since turning 18 years of age; and (5) to explain how their religious beliefs permit them to take the vaccines listed in question 4 but prohibit the taking of a COVID-19 vaccine.

Employees who were granted a medical or religious exemption were required to test weekly and to be assessed daily.  Employees whose exemptions were denied were required to obtain the vaccine or they would be subject to disciplinary actions including lost wages, lost benefits, suspension, or termination.   Vaccinated

employees who did not obtain the annual booster would not be subject to weekly tests, daily COVID health assessments, or temperature checks.

On July 7, 2022, Plaintiffs initiated this lawsuit. They brought eight claims: (i) violation of the United States Constitution Article IV, Section 4 Guarantee Clause; (ii) violation of N.Y. Constitution Article III, Section 1; (iii) violation of substantive due process under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; (iv) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3); (v) breach of contract; (vi) violation of procedural due process under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983; (vii) violation of N.Y. Constitution Article I, Section 6 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution for arbitrary and capricious conduct; and (viii) violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.[4] Defendants moved to dismiss all counts under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[5]

---

[4] Although courts often use loose language, in federal court the correct term to describe requests for relief in pleadings is "claims." *See* Fed. R. Civ. P. 8.

[5] In Plaintiffs' opposition to Defendants' motion to dismiss, they abandoned their claims for breach of contract and violation of procedural due process; accordingly, those claims are both dismissed.

## II.   DISCUSSION

### a. Standards of Review

#### i. 12(b)(1)

Rule 12(b)(1) requires that a case be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Id.* A court must accept all material factual allegations as true in evaluating a 12(b)(1) motion, but unlike with a 12(b)(6), it does not draw inferences in favor of the plaintiff. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

#### ii. 12(b)(6)

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than

10

"bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements" of a claim. *Iqbal*, 556 U.S. at 681.

**b. Analysis**

The Court now turns to an analysis of Defendants' motion.[6]

### i. Plaintiff's Guarantee Clause Claim

Plaintiffs' Complaint alleges that the Vaccine Mandate usurped the legislative power of New York's congressional bodies and thereby deprived Plaintiffs of their right to a republican form of government under the Guarantee Clause of the United States Constitution. Defendants argue that Plaintiffs claims under the Guarantee Clause are non-justiciable and should be dismissed.

Claims brought under the Guarantee Clause have been found to present non-justiciable political questions, almost without exception. *See Futia v. Westchester Cnty. Bd. of Legislators*, 852 F. App'x 30, 32 (2d Cir. 2021). In dicta in *Rucho v. Common Cause*, the Supreme Court emphasized that: "This Court has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable

---

[6] Defendants have moved to dismiss NYSCEAM for lack of standing on the basis that they did not allege sufficient facts in the Complaint to establish associational standing. Given that Defendants do not dispute that the individual Plaintiffs have standing, and because the question of NYSEAM's standing has no bearing on the merits of the case, the Court declines to address this issue. See *Kwong v. Bloomberg*, 723 F.3d 160, 162 n.4 (2d Cir. 2013) (declining to address organizational standing question where individual plaintiffs had standing).

claim." 139 S. Ct. 2484, 2506 (2019). Nevertheless, courts have still found that judicial review might be possible "even though no such claim has yet survived Supreme Court review." *See Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) (declining to "interpret *Rucho* or any other decision by the Supreme Court as having categorically foreclosed all Guarantee Clause claims as nonjusticiable[,]" and finding that district court "went too far in saying that no Guarantee Clause claim could proceed to adjudication on the merits"). Claims are "non-justiciable where 'political' in nature and where there is a clear absence of judicially manageable standards." *Reynolds v. Sims*, 377 U.S. 533, 582 (1964) (citing *Baker v. Carr*, 369 U.S. 186, 217-32 (1962)).

Several district courts have declined to find a justiciable Guarantee Clause claim in the context of New York's COVID-19 enactments. In *Lewis v. Cuomo*, the court dismissed as non-justiciable a Guarantee Clause claim that the New York legislature's delegation of emergency powers to Governor Cuomo during the pandemic deprived them of a republican form of government. 575 F. Supp. 3d 386, 397-99 (W.D.N.Y. 2021). Similarly, in *Mongielo v. Hochul*, a court dismissed a claim under the Guarantee Clause that the state legislature's delegation to Governor Hochul deprived them of a republican form of government where Governor Hochul enacted a mask mandate in New York public schools. No. 22-CV-116-LJV, 2023

WL 2307887, at *11-12 (W.D.N.Y. Mar. 1, 2023).  In both cases, the courts declined to find that question raised was "one of the rare cases in which a Guarantee Clause claim might be justiciable." *Lewis*, 575 F. Supp. 3d at 398.

While the Court is mindful that there may be some rare Guarantee Clause question that gives rise to a justiciable claim, Plaintiffs' claim is not that exception. Plaintiffs argue that the United States and New York constitutions, the major questions doctrine, and statutory interpretation provide a clear, manageable standard to discern how UCS's Vaccine Mandate deprived them of a republican form of government.  But the Court can discern no such standard under those doctrines that could guide its analysis here.  Indeed, such an expansive reading of the Guarantee Clause would run contrary to the Supreme Court's repeated finding that Guarantee Clause claims by and large do not give rise to provide justiciable questions.  *See Rucho*, 139 S. Ct. at 2506.

Even if Plaintiffs claim was justiciable, however, it is without merit.  The text of the Guarantee Clause "does not require a *particular* allocation of power within each state so long as a republican form of government is preserved."  *Largess v. Supreme Jud. Ct. for State of Massachusetts*, 373 F.3d 219, 227 (1st Cir. 2004) (emphasis in original).  Likewise, the Guarantee Clause is not violated when "States . . . retain the ability to set their legislative agendas" and when "state

government officials remain accountable to the local electorate." *Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 163 (4th Cir. 2018) (quoting *New York v. United States*, 505 U.S. 144, 186 (1992)).  As explained below, and as multiple other courts have found, UCS promulgated the Vaccine Mandate pursuant to its "constitutionally delegated authority to enact policies that enable it to meet its constitutional obligations of facilitating public access to the courts."  *See, e.g.*, *Brignall*, No. E2022-0241CV, 2022 WL 17543641, at *3.  Plaintiffs cannot plausibly allege that this properly authorized rule, enacted by New York's constitutionally empowered judicial branch, and applicable only to that branch's employees and personnel, "encroached" upon the power of the legislature.  Pls' Mem. Of Law in Opp'n 11.

For these reasons, Defendants' motion to dismiss Plaintiffs claim under the Guarantee Clause is granted.

### ii.  Violation of N.Y. Const. Art. III Section 1

In their second claim, Plaintiffs allege that Defendant OCA has implemented a public health measure for its employees that exceeds its scope of authority under N.Y. Const. Article VI.  In doing so, Plaintiffs claim that Defendants have violated the separation of powers doctrine by usurping the New York legislature's authority under the New York constitution Article III, Section 1.  Plaintiffs argue that only the

14

New York legislature may consider whether New York citizens must get vaccinated. Defendants have moved to dismiss on the grounds that UCS was authorized to implement the Vaccine Mandate under its constitutionally delegated supervisory authority and the Vaccine Mandate does not implicate separation-of-powers principles.

Turning to the first issue, the Court recognizes that this precise legal question has already been addressed by at least two courts. In *Ferrelli v. State of New York*, UCS employees who were terminated for their violation of the Vaccine Mandate after their requests for religious exemptions were denied brought suit in New York state court alleging, among other things, that Chief Administrative Judge Marks "lacked the legal authority to issue the [vaccine mandate]." No. 031506/2022, NYSCEF 74 at 19-22. The court granted defendants motion to dismiss on the grounds that the Vaccine Mandate was squarely within USC's and Chief Administrative Judge Marks' authority under Article VI, Section 28 of the New York constitution and 22 NYCRR § 80.1(a). *Id.* In *Brignall*, UCS employees sought to enjoin the Vaccine Mandate, in part because Defendants had enacted it "in excess of their jurisdiction." No. E2022-0241CV, 2022 WL 17543641, at *2 (N.Y. Sup. Ct. Apr. 13, 2022). There, the court declined to preliminarily enjoin the Vaccine Mandate, and found that UCS issued the Vaccine Mandate: "pursuant to its

15

constitutionally delegated authority to enact policies that enable it to meet its constitutional obligations of facilitating public access to the courts." *Id.* at *3.

The Court can see no basis to deviate from these determinations here. The Court agrees that Chief Administrative Judge Marks is "expressly authorized" under Article VI, § 28 to "supervise the administration and operation of [UCS]," and that 22 NYCRR § 80.1(a), in accordance with Article VI, § 28, delineates a "conspicuously broad" list of specific supervisory powers of the Chief Administrative Judge, including "any additional powers and . . . duties as assigned by the Chief Judge." *Ferrelli*, No. 031506/2022, NYSCEF 74 at 19-20. The Court cannot find that the Vaccine Mandate, as a matter of administrative policy, exceeds this broad scope of authority; accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs have failed to plausibly allege that Defendants exceeded their scope of authority under Article VI by enacting the Vaccine Mandate.[7]

Turning to the separation of powers question, the Court also finds that Plaintiffs have failed to allege a plausible claim. "Separation of powers challenges

_____

[7] Plaintiffs' argument that the Vaccine Mandate was enacted outside the bounds of UCS procedure fails for the reasons explained in *Ferrelli v. State of New York*, No. 031506/2022, NYSCEF 74 at 19-22 ("This Court agrees with Respondents that the policy is not of the sort that must go through the public comment process before implementation.").

often involve the question of whether a regulatory body has exceeded the scope of its delegated powers and encroached upon the legislative domain of policymaking." *Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 608, (2018).   Here, OCA is not an agency with delegated authority—it is the administrative arm of New York judicial branch.   To wit, it acts under the judicial branch's own constitutional authority.   This means that the health and safety rules promulgated by OCA during the pandemic do not infringe upon or implicate the New York legislature's own authority under Article III, Section 1, as there has been no delegation.

For these reasons, Plaintiffs second claim is dismissed.

### iii.   Plaintiff's § 1983 Claims

Plaintiffs bring three claims under 42 U.S.C. § 1983.[8]   First, for violation of Plaintiffs' rights under the substantive due process doctrine on the basis that the mandatory vaccine policy improperly deprived them of their fundamental right to

---

[8] Although Plaintiffs' seventh claim is not explicitly brought under § 1983, the Court reads it as such in light of Plaintiffs' requested relief of money damages and attorney fees, and in light of the Parties' briefing.

17

control their cellular biology.[9]  Second, for violation of Plaintiffs' rights under the Equal Protection Clause of the United States Constitution.  And, third, on the basis that Vaccine Mandate was arbitrary and capricious in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 6 of the New York Constitution.

As a preliminary matter, the claims against UCS and OCA are barred because they "are not 'persons' within the meaning of 42 U.S.C. § 1983." *Brown v. New York State Unified Ct. Sys.*, 261 F. App'x 307, 307-08 (2d Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Additionally, the § 1983 claims against individual Defendants in their official capacities are barred by the Eleventh Amendment.  *See, e.g.*, *Cramer v. Pyzowski*, 2007 WL 1541393, at *5 (E.D.N.Y. May 25, 2007).

This leaves only Plaintiffs' sought declaratory judgment on their Equal Protection Cause claim.  Here, Plaintiffs allege that the policy made three arbitrary classifications: (i) between Plaintiffs who are still employed pursuant to a religious

---

[9] In their Complaint, Plaintiffs additionally claim that their termination violated their right to substantive due process for violation of their right to continued employment.  Because Plaintiffs explain in their memorandum of law that their substantive due process claim is specifically about their fundamental right to control their cellular biology, and because Plaintiffs have withdrawn their claim for a violation of procedural process, the Court considers this portion of Plaintiffs' claim abandoned.

exemption but are required to test weekly and report status updates daily, and employees with expired vaccinations who do not have to test at all; (ii) between Plaintiffs and unvaccinated non-staff who entered courthouses; and (iii) between Plaintiffs and vaccinated employees on the basis that unvaccinated Plaintiffs could still be immune to COVID-19. None of these classifications trigger heightened scrutiny. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440-441 (1985). Accordingly, they will be upheld if they satisfy rational basis review.

Rational basis review is a highly deferential test whereby challenged policies are presumptively constitutional. *See Maniscalco v. N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33, 41 (E.D.N.Y. 2021). The policy in question will be upheld so long as the underlying classification is "rationally related to a legitimate governmental purpose." *Id.* As multiple other courts have found, the distinction between vaccinated and non-vaccinated persons "has an amply rational basis." *Abadi v. City of New York*, 2022 WL 347632, at *9 (S.D.N.Y. Feb. 4, 2022). Each of the classifications that Plaintiffs have proffered are rationally related to the legitimate objective of minimizing the spread of COVID-19 in New York courthouses.

In light of the ambiguity concerning Plaintiffs' seventh claim, the Court also addresses the merits of that claim. *See supra* note 8. Under the Fourteenth

Amendment to the United States Constitution,[10] substantive due process affords "protection of the individual against arbitrary action of government," but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," such that "the cognizable level of [] abuse of power is that which shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (cleaned up). [C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

Here, Plaintiffs have failed to plausibly allege conduct that meets this high bar. In so holding, the Court joins comparable decisions where courts have found that mandating vaccine requirements does not shock the conscience. *Heidel v. Hochul*, No. 20-CV-10462 (PKC), 2021 WL 4942823, at *13 (S.D.N.Y. Oct. 21, 2021), *aff'd sub nom. Heidel v. Governor of New York State*, No. 21-2860-CV, 2023 WL 1115926 (2d Cir. Jan. 31, 2023); *Maniscalco*, 563 F. Supp. at 39.

### iv.  Conspiracy to Interfere with Civil Rights pursuant to § 1985(3)

In their fourth claim, Plaintiffs assert that Defendants conspired to deprive Plaintiffs of their rights under the Free Exercise Clause of the First Amendment.

---

[10] Plaintiffs' claim under New York's constitution fails for the same reason. *See Prince v. Cnty. of Nassau*, 837 F. Supp. 2d 71, 107-08 (E.D.N.Y. 2011).

They allege that Defendants entered into an agreement to issue a predetermined percentage of religious exemption applications and created the supplemental forms in furtherance of this conspiracy.  According to Plaintiffs, the supplemental form to the religious exemption application relied on unlawful criteria to "box every applicant into a corner."  Compl. 31.  Defendants move to dismiss on the grounds that: (1) Plaintiffs' § 1985(3) claim is precluded by the intracorporate conspiracy doctrine; (2) Plaintiffs have not alleged a plausible conspiracy; (3) Plaintiffs have failed to allege a predicate constitutional right that was violated by the Vaccine Mandate; and (4) Defendants are shielded by qualified immunity.

To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir. 1991).  "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotation omitted).  A § 1985(3) "conspiracy must also be motivated by some racial

21

or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (cleaned up).

Here, Plaintiffs' Complaint fails because they have failed to "plead a conspiracy—or common agreement to violate the law—between two or more persons." *Farbstein v. Hicksville Pub. Libr.*, 254 F. App'x 50, 51 (2d Cir. 2007). Under the intracorporate conspiracy doctrine, "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008); *see also Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (recognizing that that "there is no conspiracy [under § 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment"). Plaintiffs' alleged conspirators are all employees of the New York judiciary, and therefore are legally incapable of conspiring with each other under § 1985(3).

Neither have Plaintiffs alleged, beyond conclusory allegations, that Plaintiffs were acting outside the scope of their employment. A conspirator acts outside the scope of their employment when they are "acting in their personal interests, wholly

22

and separately from the . . . municipal entity." *Rodriguez*, 644 F. Supp. 2d at 201. Plaintiffs ask the Court to infer that Defendants Justin Barry, Chief Judge DiFiore, and Chief Administrative Judge Marks "had personal animus with pro life beliefs," Pls' Mem. Of Law in Opp'n 23, but the Court can make no such inference from the facts of the Complaint.  Plaintiffs may take legitimate issue with the terms and process of UCS's Vaccine Mandate and the religious exemption—but this alone does not provide a plausible factual showing that Defendants were acting "wholly and separately" from UCS in promulgating the policy.  For these reasons, Plaintiffs claims under § 1985(3) are dismissed.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted: Plaintiffs' claim under the Guarantee Clause of the United States Constitution is dismissed as non-justiciable; Plaintiffs' claim that Defendants' Vaccine Mandate was enacted without authority and in violation of separation of powers principles is dismissed for failure to state a plausible claim; Plaintiffs' claims under § 1983 are dismissed because UCS and OCA are not persons under the statute, because the individual Defendants cannot be sued in their official capacity pursuant to the Eleventh Amendment, because Plaintiffs' Equal Protection Claim cannot pass rational basis

review, and because the Vaccine Mandate does not shock the conscience in violation

of the Fourteenth Amendment to the United States Constitution; and, Plaintiffs'

§ 1985(3) claim is dismissed under the intracorporate conspiracy doctrine.  As all

other claims have been abandoned, Plaintiffs' Complaint is dismissed.

**SO ORDERED.**


                     _/S/ Frederic Block_____
                     FREDERIC BLOCK
                     Senior United States District Judge

Brooklyn, New York
October 26, 2023